[No. A126742. First Dist., Div. Five. Mar. 24, 2011.]

ANDRES TURNER et al., Plaintiffs and Respondents, v.
ASSOCIATION OF AMERICAN MEDICAL COLLEGES, Defendant and
Appellant.

1048

COUNSEL

Fulbright & Jaworski, Robert E. Darby and Robert A. Burgoyne for Defendant and Appellant.

Disability Rights Advocates, Anna Levine; Goldstein Demchak, Baller, Borgen & Dardarian, Linda Dardarian; Schneider Wallace Cottrell Brayton Konecky, Joshua Konecky; The Impact Fund and Brad Seligman for Plaintiffs and Respondents.

Bahar Law Office and Sarvenaz Bahar for the Los Angeles County Bar Association as Amicus Curiae on behalf of Plaintiffs and Respondents.

Disability Rights Legal Center, Paula Pearlman; Locke Lord Bissell & Liddell, Peter Roan and Jade Chien for the Disability Rights Legal Center, Public Justice, P.C., The Disability Rights Education and Defense Fund, Inc., and the Legal Aid Society—Employment Law Center as Amici Curiae on behalf of Plaintiffs and Respondents.

OPINION

**SIMONS, J.**—In *Turner v. Association of American Medical Colleges* (2008) 167 Cal.App.4th 1401 [85 Cal.Rptr.3d 94] (*Turner I*), this court held that, when taking a standardized test, individuals with learning disabilities and other conditions affecting their ability to read are not entitled to accommodations under California's Unruh Civil Rights Act (Civ. Code, § 51)[1] and Disabled Persons Act (DPA) (§ 54 et seq.). We reversed the trial court's decision in favor of plaintiffs[2] and, on remand, defendant Association of American Medical Colleges sought an award of attorney fees under section 55 of the DPA. Section 55 provides that the "prevailing party" in an action for injunctive relief under the DPA "shall be entitled to recover reasonable attorney's fees." On remand, the trial court declined to award attorney fees to defendant because, among other reasons, all of the hours spent by defendant on the claim for injunctive relief under section 55 were inextricably intertwined with the defense of plaintiffs' claims under the Unruh Civil Rights Act and section 54.3 of the DPA, and only prevailing plaintiffs are entitled to attorney fees on those claims. That is, section 52 authorizes fee awards only to prevailing plaintiffs on Unruh Civil Rights Act claims, and section 54.3 authorizes fee awards only to prevailing plaintiffs on claims for violation of

---

[1] All further undesignated section references are to the Civil Code.

[2] Plaintiffs are Andres Turner, Anne Cashmore, Brendan Pierce, David Lebovitz, the National Disabled Students Union, and the International Dyslexia Association.

the DPA. The fee provisions were added to those two sections subsequent to the enactment of section 55.

This case presents an issue of first impression: Is a trial court required to award attorney fees to a prevailing defendant under the bilateral, "prevailing party" statutory fee-shifting provision in section 55 for attorney hours that were inextricably intertwined with the hours incurred in defending claims under sections 52 and 54.3?[3] We conclude that a prevailing defendant is not entitled to an attorney fee award for such hours. When the Legislature enacted the unilateral, "prevailing plaintiff" fee-shifting provisions in sections 52 and 54.3, it created an exception to section 55 by implication, prohibiting a fee award to a prevailing defendant for the same hours devoted to defending claims under sections 52 and 54.3. Thus, the trial court did not err in rejecting defendant's attorney fee request.

## FACTUAL AND PROCEDURAL BACKGROUND[4]

Defendant is a nonprofit organization whose members include medical schools and teaching hospitals throughout the country. Its mission is to improve public health by enhancing the effectiveness of academic medicine. Among other things, defendant develops and administers the Medical College Admission Test (MCAT), a nationwide standardized test designed to assess a medical school applicant's knowledge of basic science concepts, writing skills, and facility in problem solving and critical thinking.

Plaintiffs Turner, Cashmore, Pierce, and Lebovitz are California residents with reading-related learning disabilities and/or attention deficit hyperactivity disorder who applied to take the MCAT in California in 2004. Defendant denied their requests for more time and/or a private room in which to take the test. In July 2004, these four individuals and two nonprofit organizations, the National Disabled Students Union and the International Dyslexia Association, filed a class action complaint alleging that defendant failed to accommodate Turner, Cashmore, Pierce, Lebovitz, and other similarly situated students with learning disabilities who were seeking to take the MCAT. The complaint alleged causes of action under the Unruh Civil Rights Act, the DPA, and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). The complaint

---

[3] A "bilateral" attorney-fee-shifting provision authorizes the recovery of fees by whichever party prevails, while a "unilateral" attorney-fee-shifting provision limits that right to a specified party, often to the prevailing plaintiff in the civil rights context. (See *Santisas v. Goodin* (1998) 17 Cal.4th 599, 626 [71 Cal.Rptr.2d 830, 951 P.2d 399] [discussing unilateral and bilateral contractual attorney-fee-shifting provisions]; *Kelley v. Bredelis* (1996) 45 Cal.App.4th 1819, 1835 [53 Cal.Rptr.2d 536] [same].)

[4] This summary borrows liberally from our decision in *Turner I, supra,* 167 Cal.App.4th 1401.

alleged that the requests for accommodations should have been considered under these state statutes, which define "disability" more broadly than the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.). Plaintiffs sought injunctive relief, declaratory relief, and attorney fees, but not damages.

The trial court granted plaintiffs' motion for class certification "for the limited purpose of determining whether [defendant] must apply California law to the members of the defined class." Following a five-day bench trial, the court ruled, among other things, that defendant is required to provide reasonable accommodations that do not otherwise fundamentally alter the MCAT to persons with established disabilities as defined under the Unruh Civil Rights Act and the DPA. The court rejected the cause of action under Business and Professions Code section 17200. It awarded plaintiffs approximately $1,969,000 in attorney fees and costs as the prevailing parties under section 55.

In *Turner I, supra,* 167 Cal.App.4th 1401, this court reversed the trial court's judgment in favor of plaintiffs, as well as the fee award. On remand, defendant sought an award of attorney fees ($1,631,787.50) and costs ($35,690.22) as the new prevailing party under section 55. Defendant's request included all attorney hours reasonably spent on the case, rather than just those hours dedicated exclusively to the section 55 claim. Defendant asserted, "[b]ecause of the interrelated nature of plaintiffs' claims under the DPA and the Unruh [Civil Rights] Act and the common factual basis for each claim, it would be virtually impossible to segregate the time spent by [defendant] in defending against plaintiffs' claims under one statute but not the other."

The trial court denied defendant's request for attorney fees. The court stated that the fee award sought by defendant "would conflict with the statutory policy embodied in the Unruh [Civil Rights] Act and other sections of the DPA not to award fees to a prevailing defendant." The court "harmonize[d]" the statutory provisions by concluding that attorney fees should not be awarded to a prevailing defendant under section 55 unless the plaintiff's claims were frivolous, which the claims in this case plainly were not. The trial court also concluded that a "reasonable" fee under section 55 would be an award of "zero" fees, particularly in light of plaintiffs' limited financial resources. The court awarded defendant $30,447.95 in costs. This appeal followed.[5]

---

[5] This court permitted the filing of two amicus curiae briefs in support of plaintiffs, one from the Los Angeles County Bar Association, and one from the Disability Rights Legal Center, Public Justice, P.C., the Disability Rights Education and Defense Fund, Inc., and the Legal Aid Society—Employment Law Center (hereafter collectively referred to as Disability Rights Amici Curiae). Defendant filed responses to those briefs.

## DISCUSSION

■ Ordinarily, a party to litigation may recover its attorney fees only when fee shifting is provided for by statute or by agreement of the parties. (Code Civ. Proc., § 1021;[6] *Trope v. Katz* (1995) 11 Cal.4th 274, 278 [45 Cal.Rptr.2d 241, 902 P.2d 259] ["California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees. [Citations.]"].) In the present case we are confronted with the question of whether a prevailing defendant may recover statutorily authorized fees where such an award would conflict with other subsequently enacted statutes that provide that only prevailing plaintiffs may recover fees.

### I. *Standard of Review and General Principles of Statutory Interpretation*

Generally, a trial court's determination of whether a party is entitled to an award of attorney fees, and the calculation of such an award, is reviewed for abuse of discretion. (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 315 [193 Cal.Rptr. 900, 667 P.2d 704]; *Molski v. Arciero Wine Group* (2008) 164 Cal.App.4th 786, 790 [79 Cal.Rptr.3d 574] (*Molski*).) However, where, as here, the propriety of an attorney fee award turns on an issue of statutory interpretation, the review is de novo. (*Silver v. Boatwright Home Inspection, Inc.* (2002) 97 Cal.App.4th 443, 448–449 [118 Cal.Rptr.2d 475].)

■ The present case requires this court to apply three different, but related, statutory provisions: sections 52, 54.3, and 55. In doing so, " '[u]nder well-established rules of statutory construction, we must ascertain the intent of the drafters so as to effectuate the purpose of the law. [Citation.] Because the statutory language is generally the most reliable indicator of legislative intent, we first examine the words themselves, giving them their usual and ordinary meaning and construing them in context.' [Citation.] '[E]very statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect.' [Citation.]" (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166] (*Mejia*).) " 'Where as here [multiple] codes are to be construed, they "must be regarded as blending into each other and forming a single statute." [Citation.] Accordingly, they "must be read together and so construed as to give effect, when possible, to all the provisions thereof." [Citation.]' [Citation.]" (*Ibid.*)

■ "When the plain meaning of the statutory text is insufficient to resolve the question of its interpretation, the courts may turn to rules or

---

[6] Code of Civil Procedure section 1021 provides in pertinent part: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ."

maxims of construction 'which serve as aids in the sense that they express familiar insights about conventional language usage.' [Citation.] Courts also look to the legislative history of the enactment. 'Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' [Citation.] Finally, the court may consider the impact of an interpretation on public policy, for '[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.' [Citation.]" (*Mejia, supra*, 31 Cal.4th at p. 663.) " 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].)

Where two or more statutes cannot "be harmonized so that the legal effect intended by each can be carried out," additional principles of statutory construction assist courts in resolving the conflict between statutes. (*McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 211, 219 [89 Cal.Rptr.2d 295] (*McLaughlin*).) We conclude below in part III. that, in the factual context of this case, such an "irremediable conflict" (*id.* at p. 219) exists between the statutes at issue. The principles of statutory construction that aid our resolution of the conflict are discussed in detail below in part IV.

## II. *The Statutory Scheme*

Section 51, the Unruh Civil Rights Act, prohibits invidious discrimination in public accommodations. Section 51, subdivision (b) provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Section 51, subdivision (f) provides that "[a] violation of the right of any individual under the [ADA] shall also constitute a violation of this section." Subdivision (f) was added to section 51 in 1992; the Legislature's express intent was "to strengthen California law in areas where it is weaker than the [ADA] and to retain California law when it provides more protection for individuals with disabilities than the [ADA]." (Stats. 1992, ch. 913, § 1, p. 4282; see also *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 668–669 [94 Cal.Rptr.3d 685, 208 P.3d 623] (*Munson*).)

Section 52 is the enforcement mechanism for the substantive provisions in section 51.[7] Section 52, subdivision (a) provides, "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6." Section 52, subdivision (c)(3) also authorizes an "aggrieved" person to bring a civil action requesting "preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for the conduct, as the complainant deems necessary to ensure the full enjoyment of the rights described in this section." (See also *Surrey v. TrueBeginnings, LLC* (2008) 168 Cal.App.4th 414, 418 [85 Cal.Rptr.3d 443].)

█ The DPA (§ 54 et seq.) is a California statutory scheme guaranteeing access to people with disabilities.[8] "Sections 54 and 54.1 generally guarantee individuals with disabilities equal access to public places, buildings, facilities and services, as well as common carriers, housing and places of public accommodation, while section 54.3 specifies remedies for violations of these guarantees, including a private action for damages." (*Munson, supra*, 46 Cal.4th at p. 674, fn. 8.) Section 54.3, subdivision (a) provides in pertinent part that "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars ($1,000), and attorney's fees as may be determined by the court in addition thereto, suffered by any person denied any of the rights provided in Sections 54, 54.1, and

---

[7] Although section 51, subdivision (a) states that the section "shall be known, and may be cited, as the Unruh Civil Rights Act," sections 51 and 52 are "interrelated parts of the same statutory scheme . . . with section 52 serving 'to provide an enforcement mechanism for section 51 and other provisions of law.' [Citations.]" (*Munson, supra*, 46 Cal.4th at pp. 667–668.)

[8] Although part 2.5 of division 1 of the Civil Code, which currently consists of sections 54 to 55.3, has no official title, it is commonly referred to as the " 'Disabled Persons Act.' " (*Munson, supra*, 46 Cal.4th at p. 674, fn. 8.) The DPA and the Unruh Civil Rights Act "have significant areas of overlapping application." (*Munson*, at p. 675.) Like the DPA, the Unruh Civil Rights Act prohibits discrimination against disabled persons, but it also applies to many other types of discrimination; the DPA contains "unique specific provisions" absent in the Unruh Civil Rights Act and "may apply to more public places, facilities, and services" than the Unruh Civil Rights Act. (*Munson*, at p. 675; see also *Reycraft v. Lee* (2009) 177 Cal.App.4th 1211, 1227, fn. 6 [99 Cal.Rptr.3d 746].)

54.2. . . ." The Legislature recognized the potential overlap between sections 52 and 54.3, providing in section 54.3, subdivision (c) that "A person may not be held liable for damages pursuant to both this section and Section 52 for the same act or failure to act."[9]

■ Section 55 expressly authorizes private actions for injunctive relief to correct violations of DPA standards. Section 55 provides, "Any person who is aggrieved or potentially aggrieved by a violation of Section 54 or 54.1 of this code . . . may bring an action to enjoin the violation. The prevailing party in the action shall be entitled to recover reasonable attorney's fees." (See *Molski, supra*, 164 Cal.App.4th at p. 790 ["the plain language of section 55 allows bilateral fee recovery"].) One notable difference between sections 54.3 and 55 relates to the standing required to support actions under the respective provisions: "[a]n equitable action under section 55 carries no standing requirement other than that the plaintiff be a 'person who is aggrieved or potentially aggrieved' by the challenged violation," while section 54.3 "imposes the standing requirement that the plaintiff have suffered an actual denial of equal access before any suit for damages can be brought. [Citation.] In other words, while virtually any disabled person can bring an action to compel compliance with the DPA under section 55, a plaintiff cannot recover damages under section 54.3 unless the violation actually denied him or her equal access to some public facility." (*Urhausen v. Longs Drug Stores California, Inc.* (2007) 155 Cal.App.4th 254, 265–266 [65 Cal.Rptr.3d 838] (*Urhausen*).)

III. *There Is a Conflict in the Present Case Between Sections 52, 54.3, and 55*

■ Where, as here, a prevailing defendant has incurred attorney fees defending claims arising under sections 52, 54.3, and 55, and those fees are inextricably intertwined, a conflict arises between sections 52 and 54.3, on the one hand, and section 55, on the other. Section 55 authorizes fee awards to prevailing defendants, but sections 52 and 54.3 authorize such awards only to prevailing plaintiffs. Although sections 52 and 54.3 do not literally state

---

[9] Plaintiffs did not seek damages under section 54.3, but they did seek attorney fees under that section and a declaration that defendant's policies violated the DPA. We read section 54.3 as authorizing a plaintiff to seek damages and/or attorney fees as a remedy for violation of section 54 of the DPA. Defendant does not argue to the contrary.

Plaintiffs also sought, in the complaint, an award of attorney fees on their unfair competition law claim (Bus. & Prof. Code, § 17200 et seq.) under Code of Civil Procedure section 1021.5, which gives trial courts discretion to award fees "in any action which has resulted in the enforcement of an important right affecting the public interest." Because sections 52 and 54.3 reflect more clearly and directly the Legislature's intent as to fee shifting in the context of the claims in this case, we focus on those sections rather than on Code of Civil Procedure section 1021.5.

that prevailing defendants may not receive fee awards, that, as we explain below, is a necessary corollary to the Legislature's decision to authorize such awards only to prevailing plaintiffs. And it reflects a conscious decision: if prevailing defendants were able to obtain fees for attorney hours spent defending claims under the Unruh Civil Rights Act and section 54.3, it would undermine the purpose of the unilateral fee-shifting provisions—to encourage enforcement of the statutes without fear of an adverse fee award in the event the enforcement action fails.

As the court explained in *Covenant Mutual Ins. Co. v. Young* (1986) 179 Cal.App.3d 318, 324 [225 Cal.Rptr. 861] (*Covenant*), unilateral fee-shifting provisions are "created by legislators as a deliberate stratagem for advancing some public purpose, usually by encouraging more effective enforcement of some important public policy." In particular, such provisions reflect the Legislature's intent "to encourage injured parties to seek redress—and thus simultaneously enforce public policy—in situations where they otherwise would not find it economical to sue." (*Id.* at p. 325.) In rejecting a defendant's claim that the principle of " 'reciprocity' " justified permitting a defendant to receive a fee award under a statute awarding fees to prevailing plaintiffs,· the court explained that a fee award to a prevailing defendant in that context "obviously would frustrate the legislative intent to allow more injured people to seek redress and to encourage improved enforcement of public policy. Indeed it is entirely possible bilateral fee-shifting would lead to fewer lawsuits and less effective enforcement than is experienced in the absence of any fee-shifting at all. Injured people contemplating a lawsuit would confront the prospect of having to pay the defendant's legal fees as well as their own in the event they lost. This would make the bet even less appealing where the potential recovery was modest or where the chances of winning were good but uncertain." (*Id.* at pp. 325–326; see also *id.* at p. 328 [a fee award to a prevailing defendant on a claim with a unilateral fee-shifting provision would "discourage the meritorious as well as the frivolous lawsuit and thereby defeat the legislative goal of encouraging the redress of grievances and enhancing the enforcement of public policy"].)

██ The same rationale underlies the unilateral fee-shifting provisions in sections 52 and 54.3. The statutory language authorizing fee awards only to prevailing plaintiffs reflects a determination that prevailing defendants should *not* receive a fee award for hours spent defending such claims. This is reflected strongly in the legislative history to section 52, when, in 1976, it was amended to include the unilateral fee-shifting provision by Assembly Bill No. 2553 (1975–1976 Reg. Sess.) (Stats. 1976, ch. 367, § 2, p. 1014). Particularly notable is a September 9, 1975 letter from Attorney Matthew B. Weinberg to Speaker of the Assembly Leo T. McCarthy, which letter was requested by the Assembly Judiciary Committee and attached to the January 12, 1976 "Bill Analysis Work Sheet" for Assembly Bill No. 2553 (Weinberg

Letter). The Weinberg Letter addressed a question raised by the Legislative Counsel of California as to whether the proposed statutory language providing fees to prevailing plaintiffs but not to prevailing defendants would violate state and federal constitutional guarantees of equal protection of the law. Citing state and federal authorities, the letter opined, "The Legislature is not required by the equal protection provisions of the Constitution to provide attorney's fees to a successful defendant in instances where it provides attorney's fees to successful plaintiffs." (Weinberg Letter, *supra*, at p. 1.) A committee bill digest noted that under Assembly Bill No. 2553 "violators of the [Unruh Civil Rights] Act are liable for the plaintiff's attorney's fees" and "[t]here is no [c]onstitutional impediment to prohibit the award of attorney's fees to only one party." (Assem. Com. on Judiciary, dig. of Assem. Bill No. 2553 (1975–1976 Reg. Sess.) as introduced Sept. 8, 1975, p. 3.) Accordingly, the legislative history to the unilateral fee-shifting provision in section 52 reflects the Legislature's considered judgment that prevailing defendants in Unruh Civil Rights Act actions should not receive a fee award. The legislative history to section 54.3 is consistent, although less extensive; an enrolled bill report states that the bill adding the fee-shifting provision to section 54.3 "would encourage the legal community to litigate the civil right claims of physically handicapped person(s) by imposing a statutory provision [e]nsuring them legal fees." (Governor's Off., Dept. of Legal Affairs, Enrolled Bill Rep. on Sen. Bill No. 962 (1981–1982 Reg. Sess.) Aug. 31, 1981.)[10]

A number of California decisions have followed *Covenant, supra*, 179 Cal.App.3d 318, in recognizing that unilateral fee-shifting provisions reflect a considered legislative judgment that prevailing defendants should not receive fees. (See, e.g., *Alcott v. M. E. V. Corp.* (1987) 193 Cal.App.3d 797, 800 [238 Cal.Rptr. 520] ["one-sided statutory and judicially mandated fee-shifting provisions serve a specific public policy which would be vitiated by the grant of reciprocity"]; *Wood v. Santa Monica Escrow Co.* (2007) 151 Cal.App.4th 1186, 1191 [60 Cal.Rptr.3d 597] (*Wood*) [unilateral fee-shifting provisions "are created by the Legislature as a deliberate stratagem to encourage more effective enforcement of some important public policy"]; *Brown v. West Covina Toyota* (1994) 26 Cal.App.4th 555, 561 [32 Cal.Rptr.2d 85] (*Brown*) ["statutes expressly permitting fees for only a particular prevailing party have been interpreted as denying fees for the other party, even if it prevailed"], disapproved on other grounds in *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 995–996 [73 Cal.Rptr.2d 682, 953 P.2d 858] (*Murillo*); see also, e.g., *D.C. v. Harvard-Westlake School* (2009) 176 Cal.App.4th 836,

---

[10] "[W]e have routinely found enrolled bill reports, prepared by a responsible agency contemporaneous with passage and before signing, instructive on matters of legislative intent. [Citations.]" (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 934, fn. 19 [22 Cal.Rptr.3d 530, 102 P.3d 915]; see also *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 49–50 [105 Cal.Rptr.3d 181, 224 P.3d 920].)

865–866 [98 Cal.Rptr.3d 300]; *Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498, 504 [14 Cal.Rptr.3d 467] (*Carver*); *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1427–1430 [95 Cal.Rptr.2d 57] (*Earley*); *Hubbard v. SoBreck, LLC* (9th Cir. 2009) 554 F.3d 742, 745 (*Hubbard*).)

The decision in *Carver, supra*, 119 Cal.App.4th 498, provides particularly clear support for concluding that a fee award to defendant under section 55 would frustrate the purposes of the unilateral fee-shifting provisions in sections 52 and 54.3. *Carver* was confronted with a conflict between the unilateral fee-shifting provision applicable to antitrust violation claims under the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.) and a contractual fee-shifting provision, under which the prevailing defendant in the case sought a fee award. (*Carver*, at pp. 501–502.) *Carver* held that the Cartwright Act's fee provision prohibits an attorney fee award to a defendant for hours spent defending against a Cartwright Act claim, even if those hours also contributed to the defense of claims for which there is a contractual right to fees. (*Carver*, at p. 504.) The court reasoned, "To allow Chevron to recover fees for work on Cartwright Act issues simply because the statutory claims have some arguable benefit to other aspects of the case would superimpose a judicially declared principle of reciprocity on the statute's fee provision, a result unintended by the Legislature, and would thereby frustrate the legislative intent to 'encourage improved enforcement of public policy.' " (*Ibid.*, quoting *Covenant, supra*, 179 Cal.App.3d at pp. 325–326; see also *Wood, supra*, 151 Cal.App.4th at pp. 1188, 1190–1191 [following *Carver* in denying contractual fees for hours inextricably intertwined with defense of a cause of action alleging financial abuse of an elder adult].)[11]

The decisions in *Molski, supra*, 164 Cal.App.4th 786 and *Murillo, supra*, 17 Cal.4th 985 do not undermine a conclusion that there is a conflict between statutes in this case. In *Molski*, the plaintiff argued that a prevailing defendant should only be awarded attorney fees under section 55 if the plaintiff's action was frivolous. (*Molski*, at p. 791.) The plaintiff argued for application of the standard under the ADA, where an award of attorney fees to the prevailing party is discretionary (42 U.S.C. § 12205; *Hubbard, supra*, 554 F.3d at p. 744), but a prevailing defendant may only be awarded fees " 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.' " (*Summers v. A. Teichert & Son, Inc.* (9th Cir. 1997) 127 F.3d 1150, 1154, quoting *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S.

---

[11] Although *Carver* is helpful in explaining why there is a statutory conflict in this case, the principle employed in *resolving* the conflict in that case is not applicable here. Because the conflict was between a statute and a contractual provision, the court had no difficulty in concluding the statute prevailed. (*Carver, supra*, 119 Cal.App.4th at p. 504.)

412, 421 [54 L.Ed.2d 648, 98 S.Ct. 694] (*Christiansburg*).)[12] *Molski* rejected application of the *Christiansburg* standard to section 55 attorney fee requests, concluding that a fee award to a prevailing defendant under section 55 does not require a finding that the plaintiff's claim was frivolous. (*Molski*, at p. 791; *Hubbard*, at p. 745; see also *Jones v. Wild Oats Markets, Inc.* (S.D.Cal. 2006) 467 F.Supp.2d 1004, 1011; *Goodell v. Ralphs Grocery Co.* (E.D.Cal. 2002) 207 F.Supp.2d 1124, 1126.) *Molski*, however, did not address the conflict between section 55 and sections 52 and 54.3. (See *Wood, supra*, 151 Cal.App.4th at p. 1191 ["A case is not authority for propositions not considered therein. [Citation.]"].)

In *Murillo, supra*, 17 Cal.4th 985, a defendant prevailed in a lawsuit brought under the Song-Beverly Consumer Warranty Act (§ 1790 et seq.). The California Supreme Court held that an award of costs to the defendant under section 1032, subdivision (b) of the Code of Civil Procedure did not conflict with a provision of the Song-Beverly Consumer Warranty Act that provided costs and attorney fees to prevailing plaintiffs only. (*Murillo*, at p. 992.) The decision is distinguishable because the court relied on language in section 1032, subdivision (b) of the Code of Civil Procedure requiring that any exception to the general rule awarding costs to prevailing parties be " 'expressly provided.' " (*Murillo*, at p. 991.) By that language, the Legislature had "clearly and explicitly informed" the courts that the general rule should take precedence. (*Ibid.*) Section 55 contains no comparable language. Moreover, *Murillo* expressly acknowledged that attorney fee awards present different considerations, and statutes providing for unilateral fee shifting are a deliberate stratagem to encourage statutory enforcement. Thus, the court pointed out that its holding "retains the primary financial benefit the Song-Beverly [Consumer Warranty] Act offers to consumers who sue thereunder to enforce their rights: their ability, if successful, to recover their 'attorney's fees based on actual time expended.' Such fees generally comprise the lion's share of the litigation costs . . . . By permitting prevailing buyers to recover their attorney fees in addition to costs and expenses, our Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible." (*Murillo*, at p. 994; see also *id.* at pp. 996, 999; *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 146 [118 Cal.Rptr.2d 569] [distinguishing *Murillo* on same basis].)

In conclusion, the unilateral fee-shifting provisions in sections 52 and 54.3 reflect the Legislature's intent to encourage vigorous enforcement of the Unruh Civil Rights Act and section 54.3 by removing the potent economic obstacles presented by the cost of obtaining representation and the risk of an

---

[12] In the remainder of this decision, we use "frivolous" as shorthand for "frivolous, unreasonable, or without foundation." (*Christiansburg, supra*, 434 U.S. at p. 421.)

adverse fee award. The trial court found, and defendant has conceded, that the hours spent defending the section 55 claim are indistinguishable from those spent defending the other claims. The statutory conflict is clear: Section 55 on its face would permit defendant to recover fees for attorney hours spent defending claims under the Unruh Civil Rights Act and section 54.3, but sections 52 and 54.3 reflect the Legislature's intent that prevailing defendants *not* receive a fee award for such attorney hours. Indeed, defendant does not appear to dispute that there is a conflict between section 55, on the one hand, and sections 52 and 54.3, on the other, in the present case; instead, it argues plaintiffs created the conflict by choosing to seek injunctive relief under section 55. We address this contention later in this decision (see *post,* at pp. 1070–1072 & fn. 17).

## IV. *Sections 52 and 54.3 Create an Exception to Section 55 by Implication*

As stated in *McLaughlin, supra,* 75 Cal.App.4th at page 219, "Since actual conflicts are inevitable given the breadth of California's extensive statutory law, courts have developed several applicable interpretative paradigms by which a later-enacted law in conflict with an existing statute may be given effect."

### A. *Legislative History*

 Because the ultimate goal is to effectuate the Legislature's intent (*Mejia, supra,* 31 Cal.4th at p. 663), courts should consider whether any legislative history provides insight into the legislative intent as to which statute prevails (*Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 598 [113 Cal.Rptr.3d 498, 236 P.3d 346]; *In re Corrine W.* (2009) 45 Cal.4th 522, 529 [87 Cal.Rptr.3d 691, 198 P.3d 1102]; *Tesco Controls, Inc. v. Monterey Mechanical Co.* (2004) 124 Cal.App.4th 780, 792–793 [21 Cal.Rptr.3d 751]). In this case, no legislative history provides insight into which statutory directive should prevail in the event of a conflict between sections 52 and 54.3 on the one hand, and section 55 on the other. As noted previously, the legislative history to the unilateral fee-shifting provisions in sections 52 and 54.3 reflects the Legislature's considered determination to encourage enforcement by favoring plaintiffs on fees, but the legislative history does not address the potential for conflict with section 55. With regard to section 55, it is notable that the original version of the bill enacting the statute contained a unilateral fee-shifting provision; the bill was amended to make numerous changes and the fee-shifting provision was made bilateral. (Compare Assem. Com. on Judiciary, dig. of Assem. Bill No. 2471 (1973–1974 Reg. Sess.) as introduced May 15, 1973, p. 1 with dig. of Assem. Bill No. 2471 (1973–1974 Reg. Sess.) as amended Apr. 22, 1974, pp. 1–2.) An enrolled bill report states, regarding the fee-shifting provision, "Physically handicapped

persons do not generally have income or resources necessary to pay for attorney fees when it is necessary to take flagrant violators to court. This bill will make it clear that the prevailing party will be entitled to attorney's fees." (Cal. Health and Welfare Agency, Enrolled Bill Rep. on Assem. Bill No. 2471 (1973–1974 Reg. Sess.) Sept. 4, 1974.) But the legislative history of section 55, like that of sections 52 and 54.3, does not provide any specific guidance regarding whether bilateral or unilateral fee shifting should prevail in the event of a conflict like that in this case.

### B. *Specific Versus General Statutes*

Turning to the principles of statutory interpretation that do not rely on an express indication of legislative intent, most straightforward is the principle that where there is a conflict between a general statute and a more specific one, the specific statute controls and will be treated as an exception to the general statute. (*McLaughlin, supra*, 75 Cal.App.4th at pp. 223–224.) As courts have explained, " 'Unless repealed expressly or by necessary implication, a special statute dealing with a particular subject constitutes an exception so as to control and take precedence over a conflicting general statute on the same subject. [Citations.] This is the case regardless of whether the special provision is enacted before or after the general one [citation], and notwithstanding that the general provision, standing alone, would be broad enough to include the subject to which the more particular one relates.' [Citation.]" (*Tapia v. Pohlmann* (1998) 68 Cal.App.4th 1126, 1133, fn. 11 [81 Cal.Rptr.2d 1]; see *McLaughlin*, at pp. 224–225 [same]; see also *Salazar v. Eastin* (1995) 9 Cal.4th 836, 857 [39 Cal.Rptr.2d 21, 890 P.2d 43] ["To the extent a specific statute is inconsistent with a general statute potentially covering the same subject matter, the specific statute must be read as an exception to the more general statute. [Citations.]"].) However, this principle does not apply where the court cannot state that one statute is truly more specific in a relevant aspect. (*Mejia, supra*, 31 Cal.4th at p. 666 ["Neither statute appears to be significantly more specific than the other."].) The present case is not one in which it can be said that one of the applicable statutory provisions is more specific than the other. Sections 52, 54.3, and 55 are all equally specific regarding the fee-shifting rules applicable to the respective claims.

### C. *Presumptions of Legislative Acquiescence and Awareness of Existing Statutes*

Defendant asserts that section 55, enacted in 1974 (Stats. 1974, ch. 1443, § 1, p. 3150), should prevail because it "was left undisturbed" when the unilateral fee-shifting provision was added to section 54.3 in 1981 (Stats. 1981, ch. 395, § 1, p. 1582), when the Unruh Civil Rights Act and the DPA were amended in

1992 (Stats. 1992, ch. 913, §§ 3–7, pp. 4283–4289), and when the DPA was amended in 2008 (Stats. 2008, ch. 549, § 2). However, defendant fails to cite authority for the proposition that the Legislature's failure to amend a statute has any significance absent a relevant judicial construction to which the Legislature can be said to have acquiesced. (Cf. *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156 [278 Cal.Rptr. 614, 805 P.2d 873] [" '[W]hen the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction. Accordingly, reenacted portions of the statute are given the same construction they received before the amendment.' [Citation.]"].) Section 55 has not been reenacted since its adoption in 1974, and no prior case has addressed the potential conflict between sections 52, 54.3, and 55. In particular, the main cases on which defendant relies—*Molski, supra,* 164 Cal.App.4th 786, *Jones v. Wild Oats Markets, Inc., supra,* 467 F.Supp.2d 1004, and *Goodell v. Ralphs Grocery Co., supra,* 207 F.Supp.2d 1124—did not address the conflict. Accordingly, there is nothing that can be inferred from the Legislature's failure to amend section 55.

Neither can we rely on the related presumption that legislators are deemed " 'to be aware of laws in effect at the time they enact new laws and are conclusively presumed to have enacted the new laws in light of existing laws having direct bearing upon them. [Citations.]' " (*McLaughlin, supra,* 75 Cal.App.4th at p. 212.) That presumption can be helpful where a provision present in an existing statute was not included in a subsequently enacted statute. (See, e.g., *Williams v. County of San Joaquin* (1990) 225 Cal.App.3d 1326, 1332–1333 [275 Cal.Rptr. 302] [court presumes the Legislature did not intend to require notice to the prosecuting attorney of consideration of release of an arrestee on his own recognizance, because the Legislature did not include a notice provision equivalent to one in a bail release statute].) Also, "lawmakers can be presumed to borrow from existing law to supply omitted meaning to later enactments . . . ." (*McLaughlin,* at p. 213; see, e.g., *People v. Weidert* (1985) 39 Cal.3d 836, 844–845 [218 Cal.Rptr. 57, 705 P.2d 380] [reference to " 'criminal proceeding' " in special circumstances enactment does not encompass a juvenile court proceeding in light of existing statute providing that juvenile court proceedings are not criminal proceedings].) However, the presumption is unhelpful in a case like the present one, where sections 52 and 54.3 actually conflict with section 55 in a lawsuit where a defendant prevails against claims under all three sections and the legal fees incurred cannot be differentiated. (See *McLaughlin,* at pp. 212–213.) We are aware of no authority that the presumption of legislative awareness of existing statutes can justify creating an exception by implication to the

express language of a subsequent enactment. To the contrary, as explained below, the general rule is that the subsequent enactment is understood to amend the existing statute.

### D. *Amendment or Exception by Implication*

In *McLaughlin*, the court was called upon to resolve a conflict between Proposition 227, the " 'English Language in Public Schools' initiative statute" and Education Code section 33050. (*McLaughlin, supra,* 75 Cal.App.4th at p. 201.) Proposition 227 enacted a new chapter in the Education Code requiring California public schools to teach children with limited English proficiency only in English, subject to the right of parents of affected children to seek waiver of the requirement. The issue before the court was whether the English-only requirement was subject to a provision in Education Code section 33050 allowing schools to apply for waivers from program requirements not enumerated in the section. Proposition 227 was silent as to Education Code section 33050. (*McLaughlin,* at p. 201.)

After reviewing the intent underlying both enactments and the history of Proposition 227, the *McLaughlin* court concluded that "there is simply no rational way to reconcile or harmonize the [c]hapter as an integrated whole with [Education Code] section 33050. One cannot uphold the clear and positive expression of intent in the [c]hapter, which mandates a strong English-based system of education subject *only* to parental waiver, while supporting the right of school districts to avoid the [c]hapter's decree through waivers. The statutes are in such irremediable conflict that to allow one would render the other 'nugatory.' [Citation.]" (*McLaughlin, supra,* 75 Cal.App.4th at p. 219.)

Turning to principles of statutory interpretation to resolve the conflict, *McLaughlin* observed: "California courts have long recognized that 'an act adding new provisions to and affecting the application of an existing statute "in a sense" amends that statute. . . .' [Citation.] An implied amendment is an act that creates an addition, omission, modification or substitution and changes the scope or effect of an existing statute. [Citations.] Like the related principles of '[r]epeal[] by implication' [citation], and 'draft[ers'] oversight' [citation], 'amendments by implication' are disfavored but are allowed to preserve statutory harmony and effectuate the intent of the Legislature [citation]." (*McLaughlin, supra,* 75 Cal.App.4th at pp. 219–220.) The court pointed out that the California Supreme Court had employed the principle in two criminal cases in concluding that subsequently enacted sentencing enhancement provisions constituted implied exceptions to a section of the Penal Code that limited prison terms to double the base term. (*McLaughlin,* at pp. 220–221; see *People v. Pieters* (1991) 52 Cal.3d 894, 902

[276 Cal.Rptr. 918, 802 P.2d 420] ["the Legislature impliedly created an exception to former Penal Code section [1170.1, subdivision (g)] when it enacted [Health and Safety Code] section 11370.4"]; *People v. Jackson* (1985) 37 Cal.3d 826, 838 [210 Cal.Rptr. 623, 694 P.2d 736] ["we read [Penal Code] section 1170.1, subdivision (g), as if it contained an exception for enhancements for serious felonies pursuant to [Penal Code former] section 667 . . ."], disapproved on other grounds in *People v. Guerrero* (1988) 44 Cal.3d 343, 348 [243 Cal.Rptr. 688, 748 P.2d 1150].)[13]

The *McLaughlin* court recognized that "the principle of amendment or exception by implication is to be employed frugally, and only where the later-enacted statute creates such a conflict with existing law that there is no rational basis for harmonizing the two statutes, such as where they are ' "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. . . ." ' [Citation.]" (*McLaughlin, supra*, 75 Cal.App.4th at pp. 222–223.) The court stated that the chapter enacted by Proposition 227 and Education Code section 33050 were so irreconcilable, because "[w]e see no way that the guarantee of English-only instruction subject solely to parental waiver can be accomplished if school boards are allowed to avoid compliance with the entire [c]hapter by seeking waivers, no matter how well intentioned administrators may be in doing so." (*McLaughlin*, at p. 223.) The court concluded that the failure to expressly amend Education Code section 33050 was an "oversight," and read into the section an implied exception from the waiver process. (*McLaughlin*, at p. 223.)[14]

■ Similarly, sections 52 and 54.3 are irreconcilable with section 55 in a lawsuit such as this, where a defendant prevails on all claims and the attorney fees incurred in defense of a claim under section 55 were inextricably intertwined with the fees incurred defending claims under sections 52 and 54.3. There is "no rational basis for harmonizing" the three fee statutes. (*McLaughlin, supra*, 75 Cal.App.4th at p. 222.) They are " ' "irreconcilable, clearly repugnant, and so inconsistent that the [three] cannot have concurrent operation" ' " in this circumstance. (*Id.* at pp. 222–223.)

---

[13] An analogous rule is the principle that "[w]hen two acts governing the same subject matter cannot be reconciled, the later in time will prevail over the earlier. [Citations.]" (*Los Angeles Police Protective League v. City of Los Angeles* (1994) 27 Cal.App.4th 168, 178 [32 Cal.Rptr.2d 574]; see also *In re Michael G.* (1988) 44 Cal.3d 283, 293 [243 Cal.Rptr. 224, 747 P.2d 1152].) Application of this principle instead of the amendment-by-implication principle would not alter our analysis in this case.

[14] There may be circumstances in which it is inappropriate to apply the amendment-by-implication principle, such as where the statutes in conflict address such different subject matters that it would be illogical to imply legislative intent to amend the earlier enactment. (See *Mejia, supra*, 31 Cal.4th at p. 667 ["Both the [Uniform Fraudulent Transfer Act (§§ 3439–3439.12)] and the Family Code govern discrete subject areas, and the Legislature's failure to legislate expressly with respect to the rare instance in which they overlap does not suggest any legislative intent as to which should prevail."].) That is not the case with sections 52, 54.3, and 55, which are closely related to each other.

An analysis of the public policy considerations supports finding an implied exception to a prevailing defendant's right to recover fees under section 55 in the circumstances of this case. (See *Mejia, supra*, 31 Cal.4th at p. 663; *People v. Coronado, supra*, 12 Cal.4th at p. 151.) Although the legislative history is not instructive, presumably the Legislature included the bilateral fee-shifting provision in section 55 to discourage at least the filing of frivolous litigation. (See *Flannery v. Prentice* (2001) 26 Cal.4th 572, 585 [110 Cal.Rptr.2d 809, 28 P.3d 860] (*Flannery*) [reciprocal fee-shifting provision in the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) furthers "the important public policy of discouraging frivolous suits as well as the policy of encouraging meritorious ones"].) One important distinction between section 55 and the FEHA fee-shifting provision considered in *Flannery* is that fee awards under FEHA are discretionary and a prevailing defendant may only obtain an award where the plaintiff's suit was frivolous. (*Holman v. Altana Pharma US, Inc.* (2010) 186 Cal.App.4th 262, 279 [111 Cal.Rptr.3d 554] ["It is now settled that the *Christiansburg* standard must be satisfied before a defendant prevailing in a FEHA action may recover attorney fees."].) The court in *Molski, supra*, 164 Cal.App.4th at pages 791–792, concluded that a defendant could obtain fees under section 55, even where the plaintiff's claim was not frivolous. Accordingly, the fee provision in section 55 may have been intended to discourage not only frivolous lawsuits, but also other lawsuits that have possible but uncertain merit.[15] (See *Covenant, supra*, 179 Cal.App.3d at p. 326.)

On the other hand, like the unilateral fee-shifting provisions in *Carver* and other cases cited above in part III., the fee provisions in sections 52 and 54.3 serve the well-established public purpose of encouraging private enforcement of disability rights law. (*Carver, supra*, 119 Cal.App.4th at p. 504; see also, e.g., *Earley, supra*, 79 Cal.App.4th at pp. 1430–1431.) We have previously described this legislative purpose in detail, and explained that the purpose is broadly recognized in California case law and specifically acknowledged in the legislative history to section 52, section 54.3, and even section 55. It is also instructive to consider the observations in *Munson* as to the Legislature's general intent regarding the enforcement of disability rights law. *Munson* emphasized that the Unruh Civil Rights Act " 'must be construed liberally in order to carry out its purpose' to 'create and preserve a nondiscriminatory environment in California business establishments by "banishing" or "eradicating" arbitrary, invidious discrimination by such establishments.' [Citation.]

---

[15] Defendant argues it is particularly important to discourage meritless suits in this context because "[a]n equitable action under section 55 carries no standing requirement other than that the plaintiff be a 'person who is aggrieved or potentially aggrieved' by the challenged violation." (*Urhausen, supra*, 155 Cal.App.4th at p. 265.) Defendant asserts, "Allowing defendants to recover their fees if they prevail provides a measure of protection to defendants in the face of a minimal standing requirement for plaintiffs . . . ."

The Unruh Civil Rights Act 'serves as a preventive measure, without which it is recognized that businesses might fall into discriminatory practices.' [Citation.]" (*Munson, supra*, 46 Cal.4th at p. 666.) To conclude that a substantial attorney fee award may be imposed on plaintiffs for the identical hours used in defending against plaintiffs' Unruh Civil Rights Act claim would not be consistent with that legislative intent. Moreover, when the Legislature amended sections 52 and 54.3 in 1992, it indicated that it sought to make California's disability rights law at least as strong as federal law. "The general intent of the legislation was expressed in an uncodified section: 'It is the intent of the Legislature in enacting this act to strengthen California law in areas where it is weaker than the [ADA] and to retain California law when it provides more protection for individuals with disabilities than the [ADA].' (Stats. 1992, ch. 913, § 1, p. 4282.)" (*Munson*, at p. 669.) To conclude that section 55 should prevail would be contrary to that intent, because it would create a potential fee liability that does not exist under the federal scheme. (See *Hubbard, supra*, 554 F.3d at pp. 744–745.)[16]

The main thrust of defendant's argument that section 55 should prevail is that it is fair to impose attorney fees on plaintiffs because plaintiffs could have elected not to pursue an injunction under section 55. Defendant relies on statements made by the court in *Molski, supra*, 164 Cal.App.4th 786, in the course of rejecting application of the federal *Christiansburg* standard to section 55. As noted previously, under *Christiansburg, supra*, 434 U.S. at page 421, a prevailing defendant in a civil rights action is entitled to attorney fees only where the action was frivolous. *Molski* noted that *Christiansburg* involved a suit under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), not "access litigation in California state court, where a plaintiff controls the relative risks, burdens and benefits by selecting from among several statutory options." (*Molski*, at p. 791.) Specifically, *Molski* noted that a plaintiff prosecuting an access claim in California "has several alternatives under California law" and can seek relief under section 52, 54.3, *or* 55. (*Molski*, at pp. 791–792.) A plaintiff seeking relief only under section 52 and/or 54.3 would not be exposed to the risk of an adverse judgment for attorney fees; by including a claim for injunctive relief under section 55, the plaintiff in *Molski* knew that he could be exposed to an adverse fee award and

---

[16] The trial court relied on these 1992 amendments to sections 52 and 54.3 to conclude that, in the circumstances of this case, a prevailing defendant would be entitled to attorney fees only if it established that the plaintiff's claims were frivolous under *Christiansburg, supra*, 434 U.S. 412. Although this resolution may reflect a wise policy balance, we adopt a different approach because the trial court's resolution changes each of the three fee provisions: it creates the possibility of a fee award to a prevailing defendant for hours spent on claims under sections 52 and 54.3, and it would make discretionary the mandatory language of the section 55 fee-shifting provision. Instead, we simply read an exception into section 55 prohibiting an attorney fee award for a prevailing defendant for hours spent defending claims under section 52 and/or section 54.3. (See *People v. Jackson, supra*, 37 Cal.3d at p. 838.)

therefore had "something to lose if he . . . [did] not carefully assess the merits" of his claim. (*Molski*, at p. 792.) The court concluded that awarding a prevailing defendant attorney fees under section 55 without a finding that the plaintiff's claims were frivolous did not offend the "spirit of California's statutory scheme." (*Molski*, at p. 792.) A plaintiff should be held accountable for "the consequences of [a] scorched-earth strategy" of electing to pursue every available statutory option, thereby "maximiz[ing] the litigation expenses of his adversary." (*Ibid.*)

Although the plaintiff in *Molski* sought relief under sections 52, 54.3, and 55 (*Molski, supra*, 164 Cal.App.4th at p. 789), the plaintiff apparently did not argue that sections 52 and 54.3 prevail over section 55 and the court did not address the conflict between the various fee provisions. Here, the fact that plaintiffs could have elected to forgo injunctive relief under section 55, and thus avoided the risk of any conflicting statutory directives on fee shifting, does not justify, as matter of public policy, a section 55 fee award to a prevailing defendant that concedes it did not incur even one extra hour of attorney fees defending the section 55 claim. To award fees under section 55 would frustrate the purposes of the unilateral fee-shifting provisions in sections 52 and 54.3, and in this case impose a crushing fee award on civil rights plaintiffs who did not even seek damages from defendant. Moreover, such an award would also undermine enforcement of section 55, which benefits all disabled persons, by discouraging future plaintiffs from including claims for injunctive relief under section 55, even where inclusion of the claim would not increase the burden of the litigation. It is reasonable to conclude the Legislature intended to discourage the filing of meritless lawsuits under section 55, but there is no reason to believe the Legislature intended to discourage requests for injunctive relief under section 55 that add nothing to the defendant's litigation burden. (See *McLaughlin, supra*, 75 Cal.App.4th at p. 223 [" 'the basic principle of statutory interpretation' " is that " 'provisions of statutes are to be interpreted to effectuate the purpose of the law' "].)

On balance, the public policy analysis supports our conclusion that sections 52 and 54.3 should be read to create an exception to section 55 by implication. The objectives underlying the unilateral fee-shifting provisions in sections 52 and 54.3 are well established in the legislative history and case law. To conclude that section 55 mandates a fee award to a prevailing defendant for hours intertwined with the defense of claims under sections 52 and 54.3 would frustrate the purposes of the unilateral fee-shifting provisions in sections 52 and 54.3 and undermine enforcement of section 55, even where its inclusion would not add to the burden of the litigation.[17]

---

[17] Although the above analysis is sufficient to support our conclusion that sections 52 and 54.3 should prevail as a matter of public policy, an additional case-specific consideration applies here. This case was pled as a class action, which complicated the risk-benefit calculus alluded to in *Molski, supra*, 164 Cal.App.4th at pages 790–791. "A class action is a

## E. *Defendant's Remaining Contentions and Conclusion*

In support of its claim to a fee award for *all* hours spent on the section 55 claim, even if the hours overlapped with the defense on other claims, defendant cites the general proposition that "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130 [158 Cal.Rptr. 1, 599 P.2d 83].) Although *Reynolds* was decided in the context of a contractual right to attorney fees, the same nonapportionment principle applies where the fee entitlement is statutory. (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1132–1133 [94 Cal.Rptr.2d 448] (*Akins*).) However, none of defendant's cases address a situation where, as here, an award of fees for all hours spent on the compensable claim would conflict with a statutory unilateral fee-shifting provision. (See *Carver, supra,* 119 Cal.App.4th at p. 505 ["*Reynolds* is distinguishable because it did not involve a conflict between a contractual right to attorney fees and a statutory prohibition against awarding such fees."]; *Wood, supra,* 151 Cal.App.4th at p. 1191 [same].)[18]

Defendant also argues that, even if a fee award for all hours spent on the section 55 claim would have been improper, the trial court abused its

representative action in which the class representatives assume a fiduciary responsibility to prosecute the action on behalf of the absent parties. [Citation.]" (*Earley, supra,* 79 Cal.App.4th at p. 1434.) It was in the interest of the prospective class that relief be sought under all potentially applicable statutes, particularly where section 55 has lower standing requirements. Moreover, unnamed class members are not liable for statutory fees awarded to a prevailing defendant. (*Earley,* at pp. 1435–1436.) Accordingly, to conclude that section 55 should prevail in cases such as the present one would create a conflict of interests between class representatives and unnamed class members: from the perspective of the unnamed class members, there would be no reason *not* to seek an injunction under section 55, but seeking such relief would involve great risk for the class representatives. And it is no answer that plaintiffs could have avoided such a dilemma by declining to seek certification of a class, because that solution— effectively, encouraging individual actions—would undermine judicial efficiency and "the effectiveness of the group remedy provided by the class action." (*Earley,* at p. 1435; see also *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 807 [94 Cal.Rptr. 796, 484 P.2d 964] [" 'If each is left to assert his rights alone if and when he can, there will at best be a random and fragmentary enforcement, if there is any at all. This result is not only unfortunate in the particular case, but it will operate seriously to impair the deterrent effect of the sanctions which underlie much contemporary law. The problem of fashioning an effective and inclusive group remedy is thus a major one.' [Citation.]"].)

[18] Defendant heavily relies on the decision in *Akins, supra,* 79 Cal.App.4th 1127. There, the court decided the plaintiff was entitled to recover a reasonable attorney fee award for all hours spent pursuing a successful statutory claim with a fee entitlement; because the hours spent pursuing the different causes of action were intertwined, the plaintiff was not required to apportion the hours between the successful statutory claim, unsuccessful statutory claims, and tort claims with no fee entitlement. (*Id.* at pp. 1132–1134.) The decision is inapposite because the statutory fee award in that case did not conflict with any other applicable fee provision.

discretion in failing to apportion the hours between the claims and make *some* fee award under section 55. In *Carver*, the trial court apportioned 65 percent of the fees to defending the Cartwright Act claims, and reduced the fees awarded to Chevron accordingly. The fees eliminated from the award were those "reasonabl[y] and necessarily incurred in defending Cartwright Act claims, even if the work performed arguably provided some benefit to other aspects of the case . . . ." (*Carver, supra,* 119 Cal.App.4th at p. 506.) Thus, the partial fee award was only for hours *solely* dedicated to non-Cartwright Act claims. (*Carver,* at p. 506.) In the present case, the trial court found and defendant conceded below that *all* hours spent defending against the three claims were inextricably intertwined; defendant has not challenged that finding on appeal. Accordingly, there were no hours that could properly be apportioned to section 55. (See *Wood, supra,* 151 Cal.App.4th at p. 1191 [no hours apportioned to tort claims where all causes of action arose out of same transaction].)

 In conclusion, we hold that where a defendant prevails against a plaintiff who sought relief under section 55 as well as under section 52 and/or section 54.3, the defendant may not obtain an attorney fee award under section 55 for attorney hours inextricably intertwined with hours spent defending claims under section 52 and/or section 54.3.[19] Although defendant argues that denying it fees in this case would effectuate a repeal of section 55, our decision does not foreclose a defendant from seeking an award under section 55 for hours that it can show were not intertwined with defense of a cause of action with a unilateral fee-shifting provision; those are the only hours that represent *additional* litigation expenses due to inclusion of a request for relief under section 55.[20] Defendant does not contend that any such hours exist in this case.

---

[19] Because we affirm on the basis that sections 52 and 54.3 prevail, we need not decide whether the trial court's order could also be upheld as a "reasonable" attorney fee award (§ 55) in light of plaintiffs' limited financial resources and any other relevant considerations. (See, e.g., *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1138 [104 Cal.Rptr.2d 377, 17 P.3d 735] [stating, in the context of a mandatory fee award to a defendant under the anti-SLAPP (strategic lawsuit against public participation) statute, "To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether."]; *Garcia v. Santana* (2009) 174 Cal.App.4th 464, 474–477 [94 Cal.Rptr.3d 299] [concluding that the trial court may consider the financial circumstances of the losing party in fashioning a fee award].)

[20] We do not understand plaintiffs to argue that the standard in *Christiansburg, supra,* 434 U.S. 412 would apply in that situation and permit a fee award for hours exclusively dedicated to section 55 only if the plaintiff's claims were frivolous. This *does* appear to be the position advocated by the Disability Rights Amici Curiae. We need not and do not reach the merits of that argument, which was rejected by the court in *Molski, supra,* 164 Cal.App.4th at pages 791–792.

## DISPOSITION

The trial court's order is affirmed. Costs on appeal are awarded to respondents.

Jones, P. J., and Needham, J., concurred.