[No. D041829. Fourth Dist., Div. One. June 15, 2004.]

STEVE CARVER et al., Plaintiffs and Respondents, v.
CHEVRON U.S.A., INC. Defendant and Appellant.

500

---

COUNSEL

Pillisbury Winthrop, Robert M. Westberg and David M. Logan for Defendant and Appellant.

Mundell, Odlum & Haws, Karl N. Haws, William P. Tooke and Bronwyn W. Petersen for Plaintiffs and Respondents.

OPINION

**McCONNELL, P. J.**—Defendant Chevron U.S.A., Inc. (Chevron) appeals a postjudgment order apportioning attorney fees previously awarded to Chevron as the prevailing party in an action filed by plaintiffs Steve Carver and other lessee-dealers of Chevron-owned service stations (collectively Dealers) for antitrust violations under the Cartwright Act (Bus. & Prof. Code,[1] § 16720 et seq.), breach of contract, fraud, deceit and breach of the implied covenant of good faith and fair dealing. The trial court's fee apportionment deleted 65 percent of the previous award, finding these fees could not be awarded to Chevron because they related exclusively, or by inextricable overlap, to the Cartwright Act issues.

The parties agree the attorney fees provision of the Cartwright Act (§ 16750, subd. (a)) does not permit an award to a prevailing defendant, and thus Chevron is not entitled to attorney fees attributable to its defense of Cartwright Act claims. However, Chevron contends the court erred by deleting attorney fees incurred by defending issues common to both the Cartwright Act claims and non-Cartwright Act claims. We conclude, as a matter of law, the Cartwright Act's unilateral fee-shifting provision precludes an award of attorney fees to a prevailing defendant for defending claims common to both Cartwright Act and non-Cartwright Act causes of action. We further conclude the court here properly apportioned fees by disallowing those fees related exclusively, or by inextricable overlap, to the Cartwright Act issues. Accordingly, we affirm the order.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

Dealers, who leased Chevron-owned service stations and purchased petroleum products from Chevron, filed the underlying action, alleging 18 causes of action arising from Chevron's variable rent program, including intentional and negligent misrepresentation, concealment, breach of contract, breach of the implied covenant of good faith and fair dealing, and unlawful vertical and horizontal restraints of trade under the Cartwright Act. After trial, a jury returned verdicts in favor of Dealers for intentional and negligent

---

[1] Statutory references are to the Business and Professions Code unless otherwise specified.

[2] A more detailed version of the factual and procedural background is set forth in two earlier appeals: *Carver v. Chevron U.S.A., Inc.* (May 28, 1999, D025937) [nonpub. opn.] and *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 137–141 [118 Cal.Rptr.2d 569] (*Carver*).

misrepresentation and concealment. The jury found in favor of Chevron on Dealers' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unlawful restraint of trade. In an unpublished opinion, we reversed the judgment against Chevron for intentional misrepresentation, negligent misrepresentation and concealment, and affirmed the judgment in favor of Chevron for unlawful restraint of trade. (*Carver v. Chevron U.S.A., Inc., supra,* D025937.) On remand, judgment was entered in favor of Chevron on the case as a whole.

Chevron, as prevailing party, moved for an award of costs and attorney fees based on a provision in its leases with Dealers. The court granted Chevron's motion and awarded it $4,643,380 in attorney fees.

Dealers appealed the award of attorney fees and costs. In a published opinion, we affirmed the award in part, but reversed that portion granting Chevron attorney fees incurred in defending the Cartwright Act causes of action. (*Carver, supra,* 97 Cal.App.4th 132, 147.) We held that although the attorney fees and costs award was well supported on the contract and related tort theories arising out of the lease agreements, the attorney fees clause in those agreements "cannot be construed to cover Chevron's costs of defending against the Cartwright Act claims, and the trial court was required by statute to make an apportionment of those defense costs and to delete them from the amount of attorney fees claimed under the parties' agreement." (*Id.* at pp. 137, 147.) Accordingly, we reversed the order and directed the court "to make appropriate findings and apportionment of attorney fees to delete only that part of the attorney fees award that represents the defense of the Cartwright Act claims." (*Id.* at p. 155.) We did not decide whether the court was required to delete fees for overlapping claims.

Chevron filed a motion for apportionment of attorney fees consistent with our opinion in *Carver.* Chevron argued no fees should be deleted because the legal work on the Cartwright Act claims, for which fees are not recoverable, was so intertwined with the legal work for claims under the lease agreement, for which fees are recoverable, that apportionment was impossible. Even if fees could be apportioned, only 17 to 25 percent related to Cartwright Act claims.

In response to Chevron's motion, Dealers argued our opinion in *Carver* required the court to delete all fees incurred on issues relevant to the Cartwright Act claims, even if the legal work underlying those fees also

related to the non-Cartwright Act claims. Dealers asserted antitrust was the predominant legal theory as confirmed by the comments of the judge who presided at the trial of this matter.[3] They estimated 70 to 80 percent of the legal work would have been performed solely on the antitrust claims, regardless of whether other claims were alleged. Any overlap in legal work with other claims occurred because the antitrust claims predominated and the secondary claims arose out of antitrust claims.

After a hearing, the court rejected Chevron's argument it was impossible or impracticable to segregate the fees attributable to the Cartwright Act claims from the fees attributable to the other claims. The court found 35 percent of the legal fees related exclusively to the non-Cartwright Act claims and 65 percent of the legal fees related exclusively, or by inextricable overlap, to the Cartwright Act claims. Based on that finding, the court reduced Chevron's previous award of attorney fees to $1,625,183.

## DISCUSSION

■    The parties do not dispute that Chevron, as prevailing party, has a contractual right to attorney fees for defending non-Cartwright Act causes of action. (See Code Civ. Proc., §§ 1021, 1032, 1033.5, subd. (a)(10); Civ. Code, § 1717.) Nor do the parties dispute that Chevron is statutorily prohibited from recovering fees for defending Cartwright Act causes of action. (Bus. & Prof., § 16750, subd. (a).) The issue before us, one of first impression, involves a third category of fees: those related "by inextricable overlap" to Cartwright Act claims because they were incurred in defending both Cartwright Act and non-Cartwright Act causes of action. Chevron's challenge to the legal basis for the court's apportionment of attorney fees presents a question of law that we review de novo. (*Carver, supra,* 97 Cal.App.4th at p. 142; *Silver v. Boatwright Home Inspection, Inc.* (2002) 97 Cal.App.4th 443, 448–449 [118 Cal.Rptr.2d 475].)

I

*Unilateral Fee Shifting Under the Cartwright Act*

■    The Cartwright Act contains a unilateral fee-shifting provision that allows an award of attorney fees to a prevailing plaintiff but not to a prevailing defendant. (§ 16750, subd. (a); *Carver, supra,* 97 Cal.App.4th at

---

[3] The trial judge, the Honorable Anthony C. Joseph, described the case as follows: "Now this is an honest-to-God, as best as I can tell, antitrust case. I told you when you first came in I'm delighted to have this antitrust case. We don't get very many of them[;] they are mostly in federal court."

p. 144.) Such nonreciprocal fee provisions "are created by legislators as a deliberate strategem for advancing some public purpose, usually by encouraging more effective enforcement of some important public policy." (*Covenant Mutual Ins. Co. v. Young* (1986) 179 Cal.App.3d 318, 324 [223 Cal.Rptr. 766, 225 Cal.Rptr. 861]; see also *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1429 [95 Cal.Rptr.2d 57].) The public policy implicit in the unilateral fee-shifting provision of section 16750, subdivision (a) is to encourage injured parties to broadly and effectively enforce the Cartwright Act "in situations where they otherwise would not find it economical to sue." (*Covenant Mutual Ins. Co. v. Young, supra*, at p. 325.) The Legislature clearly intended to give special treatment to antitrust claims under the Cartwright Act by creating this one-way fee-shifting right for a successful plaintiff but not for a defendant who successfully defends such a claim. (*Earley v. Superior Court, supra*, at p. 1428.)

In light of these public policy considerations, we conclude the unilateral fee-shifting provision of section 16750, subdivision (a) prohibits an award of attorney fees for successfully defending Cartwright Act and non-Cartwright Act claims that overlap. To allow Chevron to recover fees for work on Cartwright Act issues simply because the statutory claims have some arguable benefit to other aspects of the case would superimpose a judicially declared principle of reciprocity on the statute's fee provision, a result unintended by the Legislature, and would thereby frustrate the legislative intent to "encourage improved enforcement of public policy." (*Covenant Mutual Ins. Co. v. Young, supra*, 179 Cal.App.3d at pp. 325–326.)

In support of its argument the award should include fees incurred on common issues, Chevron relies on *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124 [158 Cal.Rptr. 1, 599 P.2d 83] (*Reynolds*). In *Reynolds*, the court held the defendants, as prevailing parties, were entitled to fees incurred on a single issue that arose out of a contract containing an attorney fees clause and another agreement containing no such clause. (*Id.* at p. 130.) The court articulated the general rule for apportioning attorney fees: "Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under [Civil Code] section 1717 only as they relate to the contract action." (*Id.* at p. 129.) However, "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Id.* at pp. 129–130.)

■ *Reynolds* is distinguishable because it did not involve a conflict between a contractual right to attorney fees and a statutory prohibition against awarding such fees. As we previously held, "the Cartwright Act fees provision is the kind of 'other statutory provision' that will override a general litigation costs entitlement . . . ." (*Carver, supra*, 97 Cal.App.4th at p. 147.) The court in *Reynolds* did not address the public policy concern that fee awards not deter enforcement of important statutory rights. (See *Brokopp v. Ford Motor Co.* (1977) 71 Cal.App.3d 841, 851 [139 Cal.Rptr. 888] [case is not authority for propositions not presented or considered].) Because section 16750, subdivision (a) expressly authorizes recovery of attorney fees for prevailing plaintiffs only, a prevailing defendant cannot use an alternative contractual fee provision to claim entitlement to fees for overlapping compensable and noncompensable claims.

II

*The Court's Fee Apportionment*

■ Once a trial court determines entitlement to an award of attorney fees, apportionment of that award rests within the court's sound discretion. (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687 [98 Cal.Rptr.2d 263]; *San Dieguito Partnership v. San Dieguito River Valley Regional etc. Authority* (1998) 61 Cal.App.4th 910, 920 [72 Cal.Rptr.2d 91], disapproved on another ground in *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1097, fn. 5 [95 Cal.Rptr.2d 198, 997 P.2d 511].) We review the court's decisions for abuse of discretion. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].) The court abuses its discretion whenever it exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish that discretion was clearly abused and a miscarriage of justice resulted. (*Ibid.*; *Silver v. Boatwright Home Inspection, Inc., supra*, 97 Cal.App.4th at p. 449.)

The parties here presented conflicting evidence on the issues of apportionment and the amount of fees to be deleted from the previous award. Chevron argued the court should not apportion any fees to Cartwright Act claims and submitted declarations stating its defense of those claims did not materially add to the attorneys' efforts in defending the lawsuit. Alternatively, Chevron asserted the court should allocate no more than 17 to 25 percent to Cartwright Act claims.

Dealers argued antitrust was the predominant legal theory of their case. They submitted declarations that the majority of the legal work—70 to 80 percent—would have been performed based solely on antitrust claims, regardless of whether other claims were asserted. Further, any overlap in legal work with other claims occurred because the antitrust claims predominated and the secondary claims arose out of antitrust claims.

The court first separated the fees attributable solely to Cartwright Act claims from those attributable solely to non-Cartwright Act claims. The court then found certain claims were inextricably intertwined and could not be further separated because they had elements of both Cartwright Act and non-Cartwright Act causes of action. By apportioning 65 percent of the fees to defending Cartwright Act claims, the court implicitly found this was predominantly an antitrust action based on the evidence before it and Judge Joseph's characterization of the case. "The court had the discretion to make that determination." (*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1181 [121 Cal.Rptr.2d 79] [court excluded fees based on finding action was principally one to enjoin unfair business practice]; see also *Track Mortgage Group, Inc. v. Crusader Ins. Co.* (2002) 98 Cal.App.4th 857, 868 [120 Cal.Rptr.2d 228] [in spite of near impossibility of apportioning, court properly exercised discretion by allocating fees based on determination of reasonable value of services attributed to compensable claims]; *Shadoan v. World Savings & Loan Assn.* (1990) 219 Cal.App.3d 97, 109 [268 Cal.Rptr. 207] [although apportionment is difficult where there is identity of issues, court's apportionment was reasonable].) Having found these fees were reasonable and necessarily incurred in defending Cartwright Act claims, even if the work performed arguably provided some benefit to other aspects of the case, the court properly deleted them from the award.

## III

### *Conclusion*

When a defendant incurs attorney fees for successfully defending both Cartwright Act and non-Cartwright Act claims, the portion of those fees related exclusively or by "inextricable overlap" to Cartwright Act claims are not recoverable. Thus, the court here properly apportioned attorney fees, consistent with the purposes of the Cartwright Act's unilateral fee-shifting provision and based on the evidence before it, by disallowing fees for overlapping claims.[4]

---

[4] Chevron further argues disallowing all overlapping fees will encourage joinder of Cartwright Act claims in actions where there is exposure for fees that are not based on the merits of the statutory claims, but on the effect joinder may have to reduce exposure for fees related

## DISPOSITION

The order is affirmed. Costs on appeal are awarded to Respondents.

Nares, J., and McDonald, J., concurred.

---

to the nonstatutory claims. However, it is purely speculative to say plaintiffs will allege Cartwright Act violations when none exist simply to avoid or reduce exposure to fees in the event they are unsuccessful.