Filed 4/21/23  Sall v. Agam CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| ANTHONY SALL et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> GIOR AGAM et al., <br><br> Defendants and Appellants. | B317976 <br> (Los Angeles County <br> Super. Ct. No. SC128623) |

APPEAL from an order of the Superior Court of Los Angeles County, Mark H. Epstein, Judge.  Affirmed.

The Law Offices of Abdulaziz, Grossbart & Rudman, Kenneth S. Grossbart and Sharice B. Marootian for Defendants and Appellants.

Leader Berkon Colao & Silverstein, Bobbie R. Bailey and Edward Matrinovich for Plaintiffs and Respondents.

Welfare and Institutions Code section 15657.5, subdivision (a), provides for an award of attorney fees to a plaintiff who prevails on a cause of action

for financial elder abuse under the Elder Abuse Act (Welf. & Inst. Code, § 15600 et seq.).[1]  The statute does not provide for an award of attorney fees to a prevailing defendant.  This case presents a single issue: whether the statute's unilateral fee shifting provision and legislative policy preclude a prevailing defendant from recovering attorney fees, even if authorized by a contract between the parties.  We conclude that it does.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1.    *The Complaint, Trial, and Dismissal*

Plaintiffs and respondents Anthony Sall and Barbara Sall filed the operative second amended complaint and alleged defendants and appellants Gior Agam, 11342 Waterford Street LLC (Waterford), and Foundation to Roof, Inc. (Foundation) intentionally concealed the existence of an underground pipeline and matching easement to a residential property that plaintiffs had purchased from Waterford.  Based on various "acts and omissions designed to conceal" the pipeline and easement, plaintiffs asserted a single cause of action for financial elder abuse against Agam as owner of Waterford; Waterford as the seller of the residential property; and Foundation as the contractor responsible for constructing the residence.  The complaint alleged a separate cause of action against non-party Stewart Title Guaranty Company for breach of its contractual duty as insurer to pay benefits under its title insurance policy.  Plaintiffs settled their claims against the insurer defendant.

---

[1]    All subsequent references to statutes are to the Welfare and Institutions Code unless otherwise stated.

Following the presentation of evidence by plaintiffs at trial, defendants orally moved for nonsuit. The court granted the motion and dismissed the action.

2. *Defendants' Motion for Contractual Attorney Fees*

Following dismissal, defendants moved for an award of contractual attorney fees in the amount of $199,899.50 pursuant to Code of Civil Procedure sections 1032, subdivision (a), and 1033.5, subdivision (a)(10). The motion was based on a provision appearing in a California Residential Purchase Agreement and Joint Escrow Instructions (the Purchase Agreement) executed by plaintiffs as buyers and Waterford as seller. Subject to an exception not applicable here, the Purchase Agreement provided that in any action or proceeding arising out of the Purchase Agreement, "the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller." The Purchase Agreement identified plaintiffs as "Buyer," and Waterford as "Seller." As prevailing parties to the litigation, defendants argued they were entitled to attorney fees as costs.

Plaintiffs opposed the motion on the sole basis that the Elder Abuse Act (§ 15600 et seq.), under which their single cause of action was litigated, precluded attorney fees for prevailing defendants.

3. *Hearing on Defendants' Motion and the Trial Court's Ruling*

At a hearing on defendants' motion for contractual attorney fees, defendants argued that plaintiffs' cause of action was not financial elder abuse, but a "real estate failure to disclose case." The trial court rejected the argument: "The fact is that at the time of trial, the only thing they went to

trial on and what they had to prove was elder abuse." Following argument of counsel, the court denied the motion for contractual attorney fees, finding section 15657.5, a unilateral fee-shifting statute under the Elder Abuse Act, precluded defendants from obtaining attorney fees.

Defendants filed a timely notice of appeal.

## DISCUSSION

It is undisputed the attorney fee provision appearing in the Purchase Agreement was implicated by plaintiffs' financial elder abuse claim, and all three defendants (Agam, Waterford, and Foundation) are "prevailing parties" as that term is defined in the general statutes governing the award of contractual attorney fees. (Code Civ. Proc., §§ 1021, 1032, subd. (a)(4); Civ. Code, § 1717, subd. (a).) The only issue here is whether defendants are entitled to the recovery of attorney fees under these general statutes notwithstanding the unilateral fee-shifting provision in section 15657.5, subdivision (a). We conclude defendants are not entitled to the recovery of attorney fees under the Purchase Agreement.

1.      *Governing Law: Attorney Fees and the Elder Abuse Act*

"'The right to recover costs exists solely by virtue of statute.' [Citations.]" (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 989 (*Murillo*).) Here, defendants rely on the general statutory law governing the award of contractual attorney fees, namely Code of Civil Procedure section 1032, subdivision (b). That statute provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." An item of allowable costs to a prevailing party includes attorney fees authorized by contract, statute, or

4

law. (*Id.*, § 1033.5, subd. (a)(10); see *id.*, § 1021 [the "measure and mode of compensation" of attorney fees is left to the agreement of the parties "[e]xcept as attorney's fees are specifically provided for by statute"].)

The Elder Abuse Act, under which plaintiffs' claim arose, contains attorney fee provisions that permit an award of attorney fees only to successful plaintiffs. As relevant here, section 15657.5 provides: "Where it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, in addition to compensatory damages and all other remedies otherwise provided by law, the court shall award *to the plaintiff* reasonable attorney's fees and costs." (§ 15657.5, subd. (a), italics added.) Financial elder abuse occurs whenever a person takes, appropriates, obtains, or retains, or assists in taking, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both. (§ 15610.30, subd. (a).)

As this court in *Bates v. Presbyterian Intercommunity Hospital, Inc.* (2012) 204 Cal.App.4th 210 noted, section 15657.5 is a "unilateral or one-way fee shifting" statute. (*Id.* at p. 216.) "Such statutes 'are created by legislators as a deliberate stratagem for advancing some public purpose, usually by encouraging more effective enforcement of some important public policy' by 'offer[ing] a bounty for plaintiffs who sue to enforce a right the Legislature has chosen to favor,' thereby 'encourag[ing] injured parties to seek redress— and thus simultaneously enforce public policy—in situations where they otherwise would not find it economical to sue.' [Citation.] . . . '[T]o superimpose some judicially manufactured principle of "reciprocity" on the statutes which call for one-sided fee shifting' would 'frustrate the legislative

5

intent to allow more injured people to seek redress and to encourage improved enforcement of public policy.' [Citation.]" (*Id*. at pp. 216–217.)

2. *Standard of Review*

"'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees . . . in this context have been satisfied amounts to statutory construction and a question of law. [Citations.]' (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)" (*Sanders v. Lawson* (2008) 164 Cal.App.4th 434, 438; accord, *Van Slyke v. Gibson* (2007) 146 Cal.App.4th 1296, 1299 [determination of attorney fees reviewed de novo].)

Nevertheless, "[a]n attorney fee dispute is not exempt from generally applicable appellate principles," from which we presume that the court's fee award order is correct. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1322; see *Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924 [a trial court's fee award order is presumed correct].)

3. *Analysis*

Defendants do not challenge the categorization of section 15657.5 as a unilateral fee-shifting statute. Instead, they assert under *Murillo, supra*, 17 Cal.4th 985, *Thompson v. Miller* (2003) 112 Cal.App.4th 327 (*Thompson*), and an unpublished federal district court opinion that section 15657.5's silence on prevailing defendants means they are entitled to contractual attorney fees as costs. They contend any contrary ruling is contrary to legislative intent.

    A.    *Defendants Are Not Entitled to Contractual Attorney Fees Under Section 15657.5*

"Courts have uniformly recognized that . . . unilateral fee-shifting statutes 'reflect a considered legislative judgment that prevailing defendants should not receive fees.' (*Turner v. Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047, 1061 (*Turner*).)" (*Dane Elec Corp., USA v. Bodokh* (2019) 35 Cal.App.5th 761, 773 (*Dane Elec Corp.*).) This principle was specifically applied to section 15657.5, subdivision (a), by our colleagues in *Wood v. Santa Monica Escrow Co.* (2007) 151 Cal.App.4th 1186 (*Wood*).

Similar to plaintiffs' allegations in this case, in *Wood* the plaintiff alleged that individual defendants and an escrow company "participated in a scheme to deprive the elderly [plaintiff] of her property by inducing her to obtain a loan secured by her residence." (*Wood*, *supra*, 151 Cal.App.4th at p. 1189.) The plaintiff's complaint alleged causes of action for elder abuse, breach of fiduciary duty, negligence, and breach of contract. (*Ibid.*) Two years later, the plaintiff voluntarily dismissed the complaint against the escrow company. Following dismissal, the escrow company moved for an award of attorney fees "based on a provision in the escrow instructions for an award of fees to the prevailing party in 'any action or proceeding' between any of the parties" in the escrow agreement, including the plaintiff and escrow company. (*Ibid.*) The court denied the motion. (*Ibid.*)

On appeal, the escrow company conceded it was not entitled to fees "for prevailing on the cause of action alleging financial abuse of an elder." (*Wood*, *supra*, 151 Cal.App.4th at p. 1190.) Despite this concession, the escrow company argued it was entitled to fees as the prevailing party on the tort causes of action. (*Ibid.*)

Our colleagues rejected this argument, finding the unilateral fee-shifting provision in section 15657.5, though silent on prevailing defendants, did not allow the escrow company to recover attorney fees on any "causes of

action [that] overlap the elder abuse cause of action." (*Wood*, *supra*, 151 Cal.App.4th at p. 1191.) To reach this conclusion, the court considered a similar fee-shifting statute addressed in *Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498 (*Carver*). (*Wood*, *supra*, at p. 1191.)

In *Carver*, several dealer-lessees sued Chevron alleging various causes of action, including antitrust violations under the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.). (*Carver*, *supra*, 119 Cal.App.4th at p. 503.) Chevron prevailed at trial on the antitrust violations, and moved unsuccessfully for an award of attorney fees under a fee provision in the contract. (*Id.* at pp. 501–503.) As in *Wood*, the *Carver* court was tasked with determining whether a unilateral fee-shifting provision in the Cartwright Act in favor of prevailing plaintiffs by implication disallowed an award to prevailing defendants. (See Bus. & Prof. Code, § 16750, subd. (a) ["Any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefore . . . and shall be awarded a reasonable attorneys' fee together with the costs of the suit"]; *Carver*, *supra*, at p. 503.) In light of interpretive principles (i.e., "[s]uch nonreciprocal fee provisions 'are created by legislators as a deliberate strategem for advancing some public purpose, usually by encouraging more effective enforcement of some important public policy'"), the *Carver* court held that the unilateral fee-shifting provision in the Cartwright Act "prohibits an award of attorney fees for successfully defending [the] Cartwright Act. . . . To allow Chevron to recover fees for work on Cartwright Act issues simply because the statutory claims have some arguable benefit to other aspects of the case would superimpose a judicially declared principle of reciprocity on the statute's fee provision, a result unintended by the Legislature, and would

8

thereby frustrate the legislative intent to 'encourage improved enforcement of public policy.' [Citation.]" (*Carver, supra*, at p. 504.)

The court in *Wood* found "*Carver* reaches a result consistent with the Legislature's intent in enacting section 15657.5, subdivision (a)." (*Wood, supra*, 151 Cal.App.4th at pp. 1190–1191.) Accordingly, the court applied *Carver's* reasoning and concluded the escrow company was not entitled to an award of contractual attorney fees pursuant to the unilateral fee-shifting provision in section 15657.5. (*Wood, supra*, 151 Cal.App.4th at pp. 1190–1191.)

Other courts have reached the same results, finding other unilateral fee-shifting statutes prevail over conflicting statutes or agreements by the parties. (E.g., *Dane Elec, supra*, 35 Cal.App.5th at pp. 771, 774 [attorney fees under renewed promissory note precluded by Lab. Code, § 218.5, subd. (a)]); *Turner, supra,* 193 Cal.App.4th at p. 1062 [unilateral fee-shifting provisions govern over bilateral fee-shifting statutes in Unruh Civil Rights Act]; *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1427–1430 [same as to Lab. Code, §§ 1194 and 218.5]; *Covenant Mutual Ins. Co. v. Young* (1986) 179 Cal.App.3d 318, 324–327 (*Covenant*) [same as to Civ. Code, §§ 3318 and 1717].)

All of these cases caution against interpreting conflicting fee award provisions in ways that burden a plaintiff's assertion of statutory rights. We apply this interpretive view as consistent with the legislative intent and policy underlying section 15657.5, subdivision (a), which we now explain.

B.      *Section 15657.5 Was Designed to Vindicate Express Public Policy*

*Wood* did not discuss how *Carver* reached a result consistent with legislative intent in enacting section 15657.5. Based on our own review of the

9

legislative history, we concur with *Wood's* conclusion. (See *Dane Elec Corp.*, *supra*, 35 Cal.App.5th at p. 773 [reviewing courts may consider "a statute's legislative history" to construe a statute].)

Section 15657.5 was enacted by Assembly Bill No. 2611 (2003-2004 Reg. Sess.) (A.B. 2611). (Stats. 2004, ch. 886, § 4.) As reported by the Senate Judiciary Committee on A.B. 2611, "this bill results from a report . . . prepared after interim hearings held by the Assembly Select Committee on Elder Abuse. . . . The hearings identified a problem related to increasing financial abuse of elders by those who, though prosecuted in the criminal courts, could not return the elder's assets." (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 2611 (2003-2004 Reg. Sess.) as amended June 29, 2004, pp. 1–2.) In addition, "this bill is necessary to make it easier to prosecute predatory caretakers of elders and dependent adults," because "disputes with third parties over the recovery of transferred assets [can] deplete entirely an elder's remaining assets, or may discourage such cases from ever being prosecuted. Under this bill, those third parties may be pursued civilly. . . . The victim would still be able to recover reasonable attorney's fees and costs, which would provide the incentive for private practitioners to take up the elder's cause on a contingency fee basis." (*Id.* at p. 4; accord, Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2611 (2003-2004 Reg. Sess.) as amended August 9, 2004 ["this bill is necessary to make it easier to prosecute predatory caretakers of elders and dependent adults"].)

This legislative intent is consistent with the declarations and findings set forth in the Elder Abuse Act. Section 15600 provides in relevant part: "The Legislature further finds and declares that infirm elderly persons and dependent adults are a disadvantaged class, . . . and few civil cases are

10

brought in connection with this abuse due to problems of proof, court delays, and the lack of incentives to prosecute these suits." (§ 15600, subd. (h).) "It is the further intent of the Legislature in adding Article 8.5 (commencing with Section 15657) to this chapter to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." (§ 15600, subd. (j).)

The policy articulated in these legislative materials expresses an intent to protect a "disadvantaged class" of victims of elder financial abuse who often lack incentives to civilly prosecute their suits. Enacting section 15657.5 was "necessary" to promote enforcement of these statutory rights. This expression of policy is similar to the policy underlying the unilateral fee-shifting provision in the Cartwright Act as discussed in *Carver*. (Compare *Carver*, *supra*, 119 Cal.App.4th at p. 504.)

Defendants' argument, if accepted, would permit a prevailing defendant to recover attorney fees incurred in defending claims under the Elder Abuse Act. Such awards "'would frustrate the legislative intent to allow more injured people to seek redress and to encourage improved enforcement of public policy. Indeed it is entirely possible bilateral fee-shifting would lead to fewer lawsuits and less effective enforcement than is experienced in the absence of any fee-shifting at all. Injured people contemplating a lawsuit would confront the prospect of having to pay the defendant's legal fees as well as their own in the event they lost. This would make the bet even less appealing.'" (*Turner*, *supra*, 193 Cal.App.4th at p. 1060, quoting *Covenant*, *supra*, 179 Cal.App.3d at pp. 325–326.)

C. Thompson *and* Murillo *Are Inapposite*

11

In support of their claim for contractual attorney fees, defendants rely on three cases—*Murillo, supra,* 17 Cal.4th 985, *Thompson, supra,* 112 Cal.App.4th 327, and *Sterling Savings Bank v. Poulsen* (N.D.Cal. July 29, 2013, No. C-12-01454 EDL) 2013 WL 3945989 (*Sterling Savings*).

*Thompson* is inapposite. There, the court held that a clause in a share purchase agreement providing "an award of attorney fees to the prevailing party in 'any dispute under [the agreements]'" was broad enough to encompass any action concerning the effect of the share purchase agreement, including tort claims for fraud, concealment, breach of fiduciary duty, and recission of the sale of stock. (112 Cal.App.4th at pp. 330–332.) Despite referencing the fact that plaintiffs had alleged the defendants "committed . . . elder abuse" in connection with fraud and breach of fiduciary duty, the court did not analyze or otherwise discuss an award of fees for a claim of elder abuse.[2] (See *id.* at pp. 332–336.) "A case is not authority for propositions not considered therein." (*Wood, supra,* 151 Cal.App.4th at p. 1191, citing *Contra Costa Water Dist. v. Bar-C Properties* (1992) 5 Cal.App.4th 652, 660.)

In light of this distinction, we respectfully disagree with the *Sterling Savings* court's summary of *Thompson* that "the defendants [in *Thompson* were entitled] to recover fees incurred in defeating the plaintiff's claims,

---

[2] The only reference of elder abuse in *Thompson* appears in the introductory paragraph: "They [(the plaintiffs)] alleged that defendants, in convincing plaintiffs to sell their shares, committed a breach of fiduciary duty, fraud, and elder abuse." (112 Cal.App.4th at p. 329.) But in the factual and procedural background and discussion, the court omitted any reference to a claim or cause of action for elder abuse: "Plaintiffs filed suit against [defendants], alleging fraud, concealment, and breach of fiduciary duty, and seeking rescission of their sale of stock. They also alleged [defendants] conspired to commit these torts." (*Id.* at p. 332.)

including their claims under the elder abuse act." (*Sterling Savings*, *supra*, at p. 14.)

*Murillo*, *supra*, 17 Cal.4th 985, is also inapposite. There, the California Supreme Court held that an award of costs under Code of Civil Procedure section 1032, subdivision (b), did not conflict with a statute of the Song-Beverly Consumer Warranty Act which provided "'costs and expenses, including attorney's fees'" to prevailing plaintiffs. (*Id*. at p. 992, quoting Civ. Code, § 1794, subd. (d).)[3] The Court reached this conclusion based on the absence of an expression of legislative intent in the cost-shifting statute: "Without some indication the Legislature intended [to disallow prevailing defendant costs], we cannot conclude such a change was made." (*Id*. at p. 993.)

However, the Court expressly acknowledged that awards for attorney fees presented differing considerations than in awards for litigation costs. The Court noted: "[O]ur interpretation of these statutes retains the primary financial benefit the Song-Beverly Act offers to consumers who sue thereunder to enforce their rights: their ability, if successful, to recover their 'attorney's fees based on actual time expended.' . . . By permitting prevailing buyers to recover their attorney fees in addition to costs and expenses, our Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible. We cannot say this aspect of the statutory scheme,

---

[3] Like section 15657.5, the Civil Code provision at issue in *Murillo* categorized attorney fees as part of a prevailing plaintiff's costs. (See Civ. Code, § 1794, subd. (d) ["If the buyer[-plaintiff] prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees"].)

13

which favors buyers exclusively, is insufficient to vindicate the Legislature's purpose in enacting the Song-Beverly Act, or that allowing a seller to recover costs when it prevails would undermine the Legislature's purpose." (*Murillo, supra,* 17 Cal.4th at p. 994.)

In light of the Court's distinction, we shall not assume the attorney fees provision in favor of a prevailing plaintiff under section 15657.5 may be read reciprocally in favor of a prevailing defendant for awards other than standard costs of suit. (Accord, *Turner, supra,* 193 Cal.App.4th at pp. 1063–1064 [distinguishing *Murillo* on same basis]; *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 147 [same].)

## DISPOSITION

The order denying defendants' motion for attorney fees is affirmed. Costs on appeal are awarded to respondents.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, J.*

We concur:

CURREY, Acting P. J.          COLLINS, J.

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.