Filed 2/18/26

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THEODORE HAUN, as Trustee, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> KELLY PAGANO et al., <br><br> Defendants and Appellants. | D084385 <br><br><br> (Super. Ct. No. 37-2020-00018288-PR-TR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Kevin A. Enright, Judge.  Affirmed.

Law Offices of John Murphy, III, John Murphy; Williams Iagmin, Jon R. Williams, and Thomas E. Robertson for Defendants and Appellants.

Higgs Fletcher & Mack, John Morris, and Steven M. Brunolli for Plaintiff and Respondent.

The question presented in this appeal is whether an award of attorney's fees under a unilateral fee-shifting provision, Welfare and Institutions Code section 15657.5, subdivision (a)[1], for a successful financial elder abuse claim

---

[1] Subsequent undesignated statutory references are to the Welfare and Institutions Code.

was improper because the petitioner in the probate case was also the cross-respondent in an unsuccessful competing claim for elder abuse. Relying primarily on this court's decision in *Carver v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 498 (*Carver*), the respondents to the original petition, Michael and Kelly Pagano, assert that the unilateral nature of the fee-shifting statute prevented the petitioner/cross-respondent, Theodore Haun, from obtaining an award for any fees related to his defense of their competing elder abuse claim. Further, the Paganos argue that because all of the attorney's fees for the competing claims were inextricably intertwined and overlapping, Haun should not have been awarded any fees. As we shall explain, we disagree with this interpretation of the statute and relevant case law and affirm the probate court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

This case involves the estate of Charles Frazier. In late 2019, Frazier became very ill and was diagnosed with an aggressive form of cancer. As a result, Frazier, who was 83 years old at the time, became physically impaired and could no longer live independently. On November 15, 2019, Frazier was discharged from the hospital into the care and home of the Paganos, who lived in Escondido. The Paganos, particularly Kelly, provided significant care for Frazier after he was released from the hospital, helping him with dressing, bathing, and at times toileting.[2] During this time, Frazier's

---

[2] Michael had lived next door to Frazier, whose home was in Hillcrest, for several years before marrying Kelly and moving to Escondido in 2013. Michael and Frazier met in 2011. They had a close friendship and bonded over their military service. Frazier was also close with Kelly, and the Paganos both testified that Frazier was like a grandfather to Kelly's three children.

First names are used only to avoid confusion; no disrespect is intended.

nephew, Jeff Frazier, was in contact with him and visited Frazier at the Paganos' home.

On December 3, 2019, at Frazier's request, the Paganos took him to meet with their estate planning attorney, Steven Bliss, to revise his prior trust. Evidence at trial showed, and the probate court later found, that Frazier only wanted to modify his existing estate plan to remove his estranged biological daughter from his trust documents. The Paganos helped Frazier through the process of drafting a new trust, taking him to Bliss's office three times, and Kelly completed the necessary paperwork for Frazier. The new trust provided the Paganos would receive a large portion of Frazier's assets. The trust was executed on December 20, 2019, and Kelly facilitated the transfer of Frazier's assets to that trust.

Over the next week, Frazier's health continued to decline and the Paganos were no longer able to provide the level of care he needed. On January 6, 2020, at Kelly's request, Frazier's oncologist provided a letter of incapacity for him without seeing Frazier in person. On January 8, 2020, the Paganos moved Frazier into a hospice care facility. The following day, Jeff and Haun, who is also Frazier's nephew, visited Frazier at the facility.[3] Jeff and Haun learned of the new trust for the first time during their visit. Frazier also told his nephews that he did not want to sign the new trust and he felt pressured to do so by the Paganos. Frazier asked his nephews to help him hire a new lawyer to change his estate plan back to its earlier form. Jeff arranged for Frazier to meet with another estate planning attorney, John

---

[3]    Jeff's father was Frazier's younger brother and Haun's mother was their sister. Frazier had good relationships with his siblings, and they were the principal beneficiaries of Frazier's prior trust. Both Jeff and Haun also had relationships with their uncle. Jeff described his relationship with Frazier as a close one, and Frazier and Jeff regularly saw each other.

Zarcaro, and Frazier executed a new trust on January 11, 2020, at the care facility. Frazier passed away on January 20, 2020.

Just two days later, Kelly filed a civil complaint for damages asserting claims for financial elder abuse under the Elder Abuse and Dependent Adult Civil Protection Act (§§ 15600, et seq.) and seeking injunctive and declaratory relief to settle the Paganos' rights under the trust executed in December and prevent the sale or transfer of any trust assets. In addition to Jeff and Haun, the Paganos named Zarcaro, and the notary public who witnessed the execution of the final trust as defendants. In their complaint, the Paganos alleged Jeff and Haun had "improperly influenced a vulnerable and cognitively impaired Mr. Frazier into creating a new, revised Living Trust for their personal and financial benefit."

On May 26, 2020, Haun, as trustee of the January 2020 trust, filed a petition in probate court alleging financial elder abuse by the Paganos. The petition sought confirmation that the January 2020 trust was enforceable and demanded the return of any property taken by the Paganos. On June 10, 2020, Kelly filed a competing petition in probate court seeking to settle the parties' rights under the December 2019 and January 2020 trusts. Kelly again alleged Jeff and Haun had committed financial elder abuse and used undue influence to take Frazier's property in bad faith for their own financial gain.

Kelly's civil action was stayed, and the two competing probate petitions were tried to the judge in a consolidated proceeding in August and October 2023. The trial lasted eight days and included the testimony of the Paganos, Jeff, Haun, Bliss, Zarcaro, the owner of the hospice care facility where Frazier passed away, several of Frazier's friends and neighbors, and his oncologist. Haun also presented the testimony of an expert in the field of

4

cognition and decision-making. At the conclusion of the trial, the court took the case under submission. On December 15, 2023, the court convened the parties to issue its ruling from the bench.

The probate court began its ruling by stating there was "no question that all four parties[, Haun, Jeff, and the Paganos,] loved and respected" Frazier. The court also found there was no issue with Frazier's capacity with respect to either the December 2019 or January 2020 trust. The court then set forth the standards for undue influence and noted the extensive role the Paganos, and especially Kelly, played in the preparation of the December 2019 trust, including entirely completing the questionnaire provided by Bliss to prepare the documents. The court pointed to recordings of Frazier's conversation with his nephews, made with Frazier's permission and entered into evidence, showing Frazier himself felt pressured into the change. The court also pointed to Bliss's testimony that he believed there might have been "influence by the Paganos over" Frazier. The court, however, recognized that Haun and Jeff were not aware of the care that the Paganos provided to Frazier in his final months of life and that once they found out the estate had been changed, Haun and Jeff naturally became angry and suspicious of the Paganos' motives. The court noted that as a result, the nephews probably asserted mistreatment by the Paganos that had not occurred.

The probate court then found the requirements for a presumption of undue influence by the Paganos with respect to the December 2019 trust were satisfied. Specifically, the court concluded a confidential relationship between the Paganos and Frazier existed, Kelly was an active participant in the preparation of the trust, and the trust provided an undue profit to the Paganos. In addition, the court found the Paganos had failed to rebut the presumption of undue influence and, further, even if the presumption were

5

not applied, the court would find the existence of undue influence. The court then found that with respect to the Paganos' competing petition, there was not undue influence by Haun and Jeff in the creation of the January 2020 trust. Although they shared a confidential relationship with their uncle, the court concluded Haun and Jeff were not actively involved in the preparation of the January 2020 trust, the purpose of which was to undo the December 2019 trust, and the January trust did not provide an undue profit to them.

The probate court granted Haun's petition and denied Kelly's petition. The court awarded Haun compensatory damages of $39,435, and doubled the award under Probate Code section 859. In addition, the court found the Paganos had committed financial elder abuse under section 15610.30. The court then issued a tentative ruling that punitive damages under section 15610.07 were not appropriate because of the significant care and love the Paganos provided to Frazier in his last days, but the court stated Haun could brief the issue. The court also ordered attorney's fees and costs to be litigated by subsequent motion. After the ruling, Kelly requested a statement of decision, which the court entered on March 13, 2024. The statement set forth the rulings announced by the court after trial.

Before the statement of decision and judgment were entered, Haun filed a motion requesting $595,574.50 in attorney's fees. The motion set forth all the work performed on the case by the law firm retained by Haun, Higgs, Fletcher & Mack, LLP, during three years of litigation, explained the hours spent on various types of litigation work, which totaled 1,656.1, and requested a total lodestar with no multiplier. The lead partner on the matter submitted a declaration in support of the motion attaching the billing records for each type of work, which set forth the number of hours spent and a description of each task.

The Paganos opposed the motion for attorney's fees. In their opposition they asserted that under the authority of this court's decision in *Carver*, Haun was not entitled to any fees because all of the fees incurred prosecuting his claim of financial elder abuse were also incurred defending against their claim. The Paganos also argued that, at minimum, the court should reduce the fees requested because they were inflated and unreasonable, and because the Paganos had offered to settle the matter by walking away from the litigation with each side bearing their own costs and fees.[4]

In his reply to the opposition, Haun asserted the Paganos' arguments were without merit because their petition did not assert a competing claim for financial elder abuse. In addition, Haun argued that *Carver* and similar cases relied on by the Paganos did not apply because those authorities all involved claims by successful defendants who also sought fees under contractual provisions or other statutes with bilateral fee shifting provisions. Haun also asked for an additional award of $6,040 for attorney's fees he incurred for work on the reply brief.

After argument, the probate court granted the fee request in part, awarding Haun $536,448. The court did not agree with the Paganos that their competing claim for elder abuse should deprive Haun of fees under section 15657.5, subdivision (a). The court stated Haun was "not a defendant attempting to recover fees based on a contractual right" and his claim was "exactly the type of claim that the legislature intended to promote by providing a unilateral fee shifting provision" for financial elder abuse claims. The court also found that apportionment of the fees was not possible because, as the parties conceded, Haun's prosecution of his claim for elder abuse was entirely intertwined with his defense of the Paganos' claim. Finally, the

---

4    The Paganos also filed a motion for new trial, which the court denied.

court reduced the amount requested by Haun based on its finding that there was some "excessive and duplicative billing, block billing, vague time entries, unidentified timekeepers, and minor mathematical errors."

The Paganos filed a timely notice of appeal.

DISCUSSION

On appeal, the Paganos makes the same argument they advanced in the probate court, asserting Haun was not entitled to any of his fees under the rationale adopted by this court in *Carver*. Haun responds that the trial court's decision was correct, and the court properly awarded fees under the fee shifting provision of section 15657.5, subdivision (a).

I

*Standard of Review*

"In general, the trial court's determination whether a party is entitled to attorneys' fees, and the amount of any such award, is reviewed under the abuse of discretion standard. (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2015) 238 Cal.App.4th 513, 519.) Where, as here, however, the propriety of the award turns on an issue of statutory interpretation or implicates the legal basis for such an award, the issue is reviewed de novo as a question of law." (*Department of Fair Employment & Housing v. Cathy's Creations, Inc.* (2020) 54 Cal.App.5th 404, 412 (*Cathy's Creations*).)

"Once a trial court determines entitlement to an award of attorney fees, apportionment of that award rests within the court's sound discretion. [Citations.] We review the court's decisions for abuse of discretion. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) The court abuses its discretion whenever it exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish that

8

discretion was clearly abused and a miscarriage of justice resulted." (*Carver, supra,* 119 Cal.App.4th at p. 505.)

II

*Legal Background*

"Section 15610.30, subdivision (a), provides that financial abuse of an elder or dependent adult occurs where a person takes or assists in taking real or personal property of such an adult to a wrongful use or with an intent to defraud, or both. Section 15657.5, subdivision (a), requires the court to award reasonable attorney fees and costs to a plaintiff where the defendant is found liable for financial abuse of an elder. The section contains no reciprocal provision for a prevailing defendant."[5] (*Wood v. Santa Monica Escrow Co.* (2007) 151 Cal.App.4th 1186, 1189 (*Wood*), fn. omitted.)

As noted, the Paganos assert Haun was precluded from obtaining any attorney's fees under this court's decision in *Carver.* "There dealer-lessees sued Chevron alleging antitrust violations under the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.), as well as a number of other causes of action,

---

[5]     Section 15657.5 states, in full: "(a) Where it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, in addition to compensatory damages and all other remedies otherwise provided by law, the court shall award to the plaintiff reasonable attorney's fees and costs. The term 'costs' includes, but is not limited to, reasonable fees for the services of a conservator, if any, devoted to the litigation of a claim brought under this article. [¶] (b) Where it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, and where it is proven by clear and convincing evidence that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of the abuse, in addition to reasonable attorney's fees and costs set forth in subdivision (a), compensatory damages, and all other remedies otherwise provided by law, the limitations imposed by Section 377.34 of the Code of Civil Procedure on the damages recoverable shall not apply. [¶] … (d) Nothing in this section affects the award of punitive damages under Section 3294 of the Civil Code."

including breach of contract. Chevron prevailed and moved for an award of attorney fees under a fee provision in the contract. The trial court refused to award fees for defense of the Cartwright Act cause of action and other causes of action where there was an 'inextricable overlap' with Cartwright Act issues. (*Carver, supra*, [119 Cal.App.4th] at pp. 503–504.)" (*Wood, supra*, 151 Cal.App.4th at p. 1190.)

"On appeal, Chevron conceded it was not entitled to fees for defending the Cartwright Act cause of action, but argued that under *Reynolds* it was entitled to fees on issues in common with causes of action for which fees are awardable. The Court of Appeal disagreed. The court pointed out that the Cartwright Act contains a unilateral fee shifting provision under which fees are awarded to a prevailing plaintiff, but not to a prevailing defendant. (Bus. & Prof. Code, § 16750, subd. (a); *Carver v. Chevron U.S.A., Inc., supra*, 119 Cal.App.4th at p. 503.) Such provisions are created by the Legislature as a deliberate stratagem to encourage more effective enforcement of some important public policy. (*Carver, supra*, at p. 504.) To allow Chevron to recover fees for work on Cartwright Act issues simply because they overlap issues related to other causes of action, would create a judicially imposed reciprocity. This result is not intended by the Legislature and would frustrate legislative policy. (*Ibid*.) The court concluded the unilateral fee shifting provision of the Cartwright Act prohibits an award of fees for successfully defending Cartwright Act and non-Cartwright Act claims that overlap." (*Wood, supra*, 151 Cal.App.4th at p. 1191.)

Several cases have followed *Carver*'s rationale to preclude attorney's awards for fees that cannot be apportioned where the plaintiff's claims were asserted under statutes with unilateral fee shifting provisions. In each case, the Court of Appeal held that the legislative intent of the laws, to promote

10

prosecution of such claims, would be undermined if overlapping defense fees were awarded. (See *Turner v. Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047 (*Turner*) [defense attorney's fees were not available under an earlier enacted bilateral fee-shifting provision contained in the Disabled Persons Act (DPA), Civil Code section 55, for intertwined fees incurred in the defense of claims under the Unruh Act and DPA, which contain unilateral fee-shifting provisions, Civil Code sections 52 and 54.3]; *Cathy's Creations, supra*, 54 Cal.App.5th 404 [an award of attorney's fees to prevailing defendants under Civil Code section 1021.5 for defending FEHA claims was limited by FEHA's unilateral fees provision]; and *Dane-Electric Corp., USA v. Bodokh* (2019) 35 Cal.App.5th 761, 764 (*Dane-Electric*) ["To the extent the wage claim and the contract claim are inextricably intertwined, [Labor Code] section 218.5(a)'s prohibition on recovering attorney fees controls over [a] contractual attorney fees provision"].)

The Court of Appeal in *Wood* followed *Carver* to hold that the same provision at issue here, section 15657.5, subdivision (a), prevented an award of attorney's fees to a successful defendant. In *Wood*, the plaintiff asserted a financial elder abuse claim, as well as claims for breach of contract, breach of fiduciary duty, and negligence, against several defendants, including an escrow company. The complaint, based on a single transaction, alleged the defendants "participated in a scheme to deprive [the decedent] of her property by inducing her to obtain a loan secured by her residence" and distributing the proceeds to one of the defendants. (*Wood, supra*, 151 Cal.App.4th at p. 1189.) The plaintiff voluntarily dismissed the claims against the escrow company, and the company sought fees based on a provision in the escrow instructions "for an award of fees to the prevailing party in 'any action or proceeding' between any of the parties to the escrow

11

and the escrow holder." (*Ibid*.)  The escrow company "claimed it was not required to apportion fees between those causes of action for which fees are awardable and those for which fees are not awardable because all causes of action arose from the same transaction." (*Ibid*.)

The trial court denied the escrow company's request for attorney's fees and the Court of Appeal affirmed, holding that because all of the claims arose from the same transaction and could not be apportioned, under the reasoning of *Carver*, the unilateral fee provision precluded all of the fees. (*Wood, supra*, 151 Cal.App.4th at p. 1191.)  The court stated, "Section 15657.5, subdivision (a), contains the same type of unilateral fee shifting provision discussed in *Carver*.  Because, as [the defendant] concedes, all the causes of action alleged here arose from a single transaction, all causes of action overlap the elder abuse cause of action." (*Ibid*.)  Thus, the defendant "is not entitled to an award of fees." (*Ibid*.)

The *Wood* court also distinguished *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, relied on by the escrow company to support its appeal. (*Wood, supra*, 151 Cal.App.4th at p. 1190.)  "In *Reynolds*, plaintiff brought an action against shareholders of a corporation seeking to hold the shareholders liable for corporate debts.  The debts arose from a contract and notes.  The notes contained attorney fee clauses but the contract did not.  The prevailing defendants moved for fees under Civil Code section 1717.  Our Supreme Court determined the defendants were entitled to fees, and also stated the '[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed.' " (*Wood,* at p. 1190.)  The *Wood* court rejected the defendant's assertion that *Reynolds* required a fee award, distinguishing

12

the case because it "did not concern the interplay between a unilateral fee-shifting statute and Civil Code section 1717." (*Id*. at p. 1191.)

II

*Analysis*

The Paganos rely on *Carver* and cases like it to contend the probate court erred by awarding fees to Haun. These cases, however, are distinguishable. *Carver*, *Wood*, *Turner*, *Cathy's Creations*, and *Dane-Electric* hold that an award of fees to the successful defendant or cross-defendant contravenes the Legislature's intent to encourage prosecution by allowing prevailing party fees only to plaintiffs. Here, there is no such infringement of legislative intent. As an initial matter, in this case the successful party is not the defendant. As the petitioner in a probate action, Haun is equivalent to the plaintiff.

In addition, even though Haun successfully defended against Kelly's financial elder abuse claim, Haun does not seek an award of fees under a contract clause or statute that would support an award of fees to a prevailing defendant. In all of the cases the Paganos cite—*Carver*, *Wood*, *Turner*, *Cathy's Creations*, and *Dane-Electric*—the prevailing defendants and cross-defendant were seeking fees under a contractual or statutory provision that authorized such an award. (See *Wood, supra*, 151 Cal.App.4th at p. 1189 [defendant sought fees under contract provision] *Turner, supra*, 193 Cal.App.4th at p. 1073 [defendant sought fees under bilateral fee-shifting provision contained in the DPA]; *Cathy's Creations, supra*, 54 Cal.App.5th at p. 415 [defendant sought fees under Code Civ. Proc., § 1021.5]; and *Dane-*

13

*Electric, supra*, 35 Cal.App.5th at p. 764 [plaintiff/cross-defendant sought fees under contract provision].)[6]

It is this direct conflict, between a bilateral fee-shifting provision allowing an award of fees to a prevailing defendant *and* a unilateral statutory fee-shifting provision (like section 15657.5, subdivision (a)) authorizing a fee award only to a prevailing plaintiff, that underlies these courts' holdings. An award of fees to a prevailing party in such circumstances unacceptably undermines the Legislature's intent to encourage the prosecution of certain types of claims (like financial elder abuse).

No such conflict exists in the factual scenario presented here. Unlike this case, the cases on which the Paganos rely all deal with prevailing parties who, although entitled to recover fees pursuant to contract or statute, were denied overlapping fees arising out of their defense to a claim with a unilateral fee-shifting provision. This outcome protects the legislative

---

[6]    At oral argument, there was some confusion about *Dane-Electric*. In that case, a company successfully sued its former executive for repayment on promissory notes that contained a prevailing party attorney's fee provision. The executive brought an unsuccessful cross-complaint for failure to pay wages, which was subject to a unilateral fee-shifting provision—Labor Code section 218.5, subdivision (a)—only allowing fees to prevailing plaintiffs unless the claim was found to be brought in bad faith. (*Dane-Electric, supra*, 35 Cal.App.5th at p. 764.) The Court of Appeal upheld the trial court's denial of an award of attorney's fees under the contract provision, holding "that unless the trial court finds the wage claim was brought in bad faith, Labor Code section 218.5, subdivision (a) … prohibits, as a matter of law, an award of attorney fees to a nonemployee prevailing party for successfully defending a wage claim that is inextricably intertwined with a claim subject to a contractual prevailing party attorney fees provision. To the extent the wage claim and the contract claim are inextricably intertwined, section 218.5(a)'s prohibition on recovering attorney fees controls over the contractual attorney fees provision." (*Ibid*.) The case did not, as Haun's counsel asserted at oral argument, address attorney's fees under California's Anti-SLAPP law.

14

intention to encourage prosecution of such claims. In contrast to those cases, the legislative intention to encourage financial elder abuse claims is not undermined by awarding overlapping fees to Haun as the prevailing petitioner. For this reason, we agree with the probate court's conclusion that section 15657.5, subdivision (a) does not bar an award of fees for the defense work that overlapped entirely with Haun's successful prosecution of his own financial elder abuse claim.[7]

Under our analysis, any attorney's fees that Haun incurred in the prosecution of his claims, or that were incurred in his defense of Kelly's

_____

[7] At oral argument, the Paganos' counsel emphasized *Turner, supra*, 193 Cal.App.4th 1047, to support their position. In *Turner*, individuals with learning disabilities unsuccessfully brought claims seeking test accommodations under the Unruh Civil Rights Act (Unruh Act) and the DPA. (*Id*. at p. 1053.) The defendant then sought attorney's fees under Civil Code section 55 of the DPA, a bilateral fee-shifting provision that awards fees to the prevailing party for injunctive relief claims. (*Ibid*.) The trial court rejected the request on the grounds that section 55 conflicted with unilateral fee-shifting provisions contained in the Unruh Act, section 52, and another provision of the DPA, section 54.3, under which the plaintiffs also asserted claims. (*Ibid*.) On appeal from that ruling, the First District considered whether "a trial court [is] required to award attorney fees to a prevailing defendant under the bilateral, 'prevailing party' statutory fee-shifting provision in section 55 for attorney hours that were inextricably intertwined with the hours incurred in defending claims under sections 52 and 54.3." (*Id*. at p. 1054.) The Court of Appeal agreed with the trial court, holding "[w]hen the Legislature enacted the unilateral, 'prevailing plaintiff' fee-shifting provisions in sections 52 and 54.3, it created an exception to section 55 by implication, prohibiting a fee award to a prevailing defendant for the same hours devoted to defending claims under sections 52 and 54.3." (*Ibid*.) The court explained that "[t]o award fees under section 55 would frustrate the purposes of the unilateral fee-shifting provisions in sections 52 and 54.3" to "encourage[] private enforcement of disability rights law." (*Id*. at p. 1071.) Contrary to the Paganos' assertion, *Turner* does not support reversal of the trial court's award of attorney's fees in this case. In contrast to *Turner*, there are no conflicting statutes here. Rather, the fees all relate to competing elder

15

claims but were inextricably intertwined with the prosecution of his claim, were properly awarded by the probate court. (See *Maxim Crane Works, L.P. v. Tilbury Constructors* (2012) 208 Cal.App.4th 286, 298 [" 'Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units.' "].)[8] Only those fees that were incurred for work attributable solely to defending against Kelly's petition were unavailable for an award. The record before this court supports the probate court's determination that because of the nature of the case, which was centered entirely on the two competing claims of financial elder abuse, all of the fees incurred by Haun were recoverable under section 15657.5, subdivision (a).

The court's order states that it "carefully reviewed the ... evidence submitted by the parties," which included all of the billing records submitted by Haun in support of his request, and the court reduced the amount of attorney's fees requested by over $65,000 based on its finding of "excessive and duplicative billing, block billing, vague time entries, unidentified timekeepers, and minor mathematical errors." On the facts in this record,

abuse claims subject to the same attorney's fee provision. As discussed, the public policy of encouraging such claims is not undermined by the trial court's award of fees to Haun.

[8] The Paganos argue the probate court's citation to *Maxim Crane* undermined its ruling because it did not concern a unilateral fee-shifting provision. As discussed, the probate court properly rejected the Paganos' assertion that *Carver* barred Haun from recovering attorney's fees associated with the defense of their financial elder abuse claim that were intertwined with his claim. Thus, *Maxim Crane*, which involved an indemnity defense not subject to a contractual attorney's fee provision, was appropriately cited by the court in its ruling.

Kelly has not shown the court's fee award was an abuse of its discretion.  (See *Carver, supra,* 119 Cal.App.4th at p. 505.)

DISPOSITION

The judgment is affirmed.  The costs of appeal are awarded to Theodore Haun.


McCONNELL, P. J.

WE CONCUR:


IRION, J.


BUCHANAN, J.